240

Mary Imogene Bassett Hospital, Appellant, v Hospital Plan, Inc., Respondent.

Fourth Department, October 29, 1982

APPEARANCES OF COUNSEL

*Kernan & Kernan, P. C.* (*Leighton R. Burns* of counsel), for appellant.

*Hinman, Straub, Pigors & Manning, P. C.* (*David J. Oakley* and *Joseph Boochever* of counsel), for respondent.

OPINION OF THE COURT

Moule, J.

In January, 1973 Mary Imogene Bassett Hospital (Hospital), the appellant, and Hospital Plan, Inc. (Blue Cross), the respondent, entered into a contract, subject to termination upon certain conditions, under which the Hospital agreed to render its services to Blue Cross subscribers. Blue Cross agreed to compensate the Hospital in accordance with a hospital reimbursement formula which was made a part of the contract between the parties and subject to periodic change. The Hospital's suit is based on allegations that Blue Cross did not fulfill the terms of the contract.

The reimbursement rate paid to a hospital, ultimately determined by the formula, is regulated by the State of

New York pursuant to section 2807 of the Public Health Law and the Commissioner of Health's implementing regulations (10 NYCRR Part 86). This law requires Blue Cross to submit a proposed formula[1] to the Commissioner of Health which is "reasonably related to the costs of efficient production" (Public Health Law, § 2807, subd 3). The formula used to determine a given hospital's rate of reimbursement is based on the actual costs from a prior year (the base year) adjusted by a trend factor which consists of several economic indicators.

The commissioner's regulations then applicable required that similar hospitals be grouped together in order to develop rate ceilings (former 10 NYCRR 86.13, 86.14). Based on such factors as size, type of hospital and location, hospitals were grouped together and a current year's average cost was arrived at for hospitals within that group. The group average was the highest figure permitted to be used in calculating reimbursement rates for the hospitals within that group.

During the years in question Blue Cross had the option, subject to application to and approval of the Commissioner of Health, to set up different groupings of hospitals from those provided for under section 86.13 of the regulations (former 10 NYCRR 86.2). Article IX of both the 1976 and 1977 formulae set forth certain criteria which Blue Cross was to use in determining the proper grouping to place the Hospital. The Hospital contends that Blue Cross did not follow the criteria set forth in article IX and that the other hospitals Blue Cross placed within its grouping were not similar to it and, due to these dissimilarities, had lower average costs. Consequently, the Hospital maintains that the rate ceiling applied to it was too low and that Blue Cross' disallowance of certain of its costs, those in excess of the group average, was improper.

The contract between Blue Cross and the Hospital contains two different sections which provide for review of the Hospital's reimbursement rate. Section 3 of the contract provided that, if the rate was not computed in accordance

---

1. In New York, Blue Cross submits two proposed formulae — an "upstate" and a "downstate" formula. Mary Imogene Bassett Hospital was included in the "upstate" grouping.

with the formula, the Hospital could apply to Blue Cross within 30 days after receiving its reimbursement rate for a revision (subds [a], [b]). Section 3 further provided that Blue Cross was obligated to make a decision on any such application by the Hospital within 30 days of receiving it (subd [c]). In contrast to section 3, article IX of the formula contained a procedure by which the Hospital could obtain a review of its grouping. That procedure provided that the Hospital could obtain review by formally notifying Blue Cross of its objection within one week of the receipt of its rate and, if the basis for the Hospital's objection was not removed by Blue Cross, the Hospital could submit the matter to a regional review board within two weeks of its notifying Blue Cross of its objection.[2] While the regional review board's determination was not binding, if Blue Cross failed to accept the recommendation, the Hospital could submit its objection to the Commissioner of Health (pursuant to 10 NYCRR Part 86).

In both 1976 and 1977 the Hospital promptly notified Blue Cross of its objection after it had received its reimbursement rate. In 1976 Blue Cross responded one day after being notified of the Hospital's objection by stating that the Hospital's appeal was being handled as expeditiously as possible. In 1977 Blue Cross replied 37 days after receiving the Hospital's objection, stating that it felt the Hospital's objections were quite valid and suggesting that the Hospital submit the matter to a regional review board pursuant to article IX of the formula.[3] To this date Blue Cross has not rendered a decision on either objection.

After it was unable to reach an agreement with Blue Cross over the disputed rates, the Hospital filed suit against Blue Cross for breach of contract. The Hospital's complaint set forth five causes of action: (1) that defendant breached section 2 of the contract requiring it to co-operate with the Hospital in modifying an inequitable formula; (2)

---

**2.** These were the time periods in the 1976 formula. The 1977 formula provided that the Hospital had to notify Blue Cross of its objection within 30 days of receiving its rate and then had an additional 30 days to bring the matter to a regional review board if its objection was not removed by Blue Cross.

**3.** Blue Cross' suggestion to bring the matter to a regional review board, pursuant to article IX of the formula, came seven days after the Hospital's time to do so had elapsed.

that defendant breached its duty to group the Hospital according to the criteria set out in article IX of the formula; (3) that defendant breached its duty of good faith concerning its grouping of the Hospital since it was aware of the Hospital's unique structure and the fact that its costs were not comparable with those of other hospitals in New York; (4) that defendant breached its duty under section 3 of the contract to decide its 1976 and 1977 appeals; and (5) that defendant breached its implied covenant of fair dealing and good faith. Blue Cross moved at Special Term under CPLR 3211 (subd [a]) to dismiss the complaint for failure to state a cause of action and because it claimed the applicable Statute of Limitations, the four-month period for article 78 proceedings, had expired prior to the time the Hospital commenced this action. Alternatively, Blue Cross requested that the State Commissioner of Health and Superintendent of Insurance be joined as necessary parties. Both parties submitted evidentiary affidavits on the motion although it was not converted to a motion for summary judgment. Special Term granted Blue Cross' motion to dismiss on the ground that the action was barred by the expiration of the Statute of Limitations (CPLR 217) and by the Hospital's failure to exhaust its administrative remedies.

The question presented on this appeal is whether the Hospital's complaint states a valid cause of action. An affidavit submitted by a defendant to support a 3211 (subd [a]) motion to dismiss will seldom, if ever, warrant the relief he seeks unless the affidavits conclusively establish that plaintiff has no cause of action (*Rovello v Orofino Realty Co.*, 40 NY2d 633, 636). Thus, the Hospital's causes of action should only be dismissed if Blue Cross' affidavits conclusively establish that they are without merit. In making this determination, the Hospital is to be given the benefit of every reasonable favorable inference (see *219 Broadway Corp. v Alexander's, Inc.*, 46 NY2d 506).

Blue Cross characterizes the Hospital's causes of action as challenges to the Commissioner of Health's certification of reimbursement formulae and claims that any challenge to its grouping should properly have been brought as an article 78 proceeding against the Commissioner of Health.

The Hospital claims that its contract with Blue Cross can be viewed apart from the regulatory framework governing hospital reimbursement rates, and that the actions it complains of are the actions of Blue Cross, not the Commissioner of Health.

Blue Cross contends that the Hospital's dissatisfaction with its grouping and factors which went into determining the reimbursement formula should have been appealed pursuant to the procedures outlined in article IX of the formula and that the Hospital's failure to do so requires dismissal of its complaint. However, we feel that the Hospital's complaint is of a more general nature concerning the reimbursement rate and could fall under either article IX or section 3 of the contract. The procedure under article IX differs from the procedure under section 3 in that section 3 of the contract obligates Blue Cross to respond to the Hospital's application for a rate revision within 30 days. There is no requirement for Blue Cross to respond under article IX. Considering the conflict between the language of section 3 of the contract and article IX of the formula regarding the appeals procedure for a hospital dissatisfied with its reimbursement rate, Blue Cross should not be permitted to preclude the Hospital's request for relief. Any ambiguity in the contract should be construed against its maker, Blue Cross. Blue Cross' contention also ignores the fact that it continued to negotiate the Hospital's appeal of its 1976 and 1977 rates until September of 1979 when, the Hospital alleges, Blue Cross broke off negotiations because of the Hospital's refusal to re-enter into a new contract.[4]

Blue Cross' claim that the Hospital did not exhaust available administrative remedies by failing to bring its objection to its grouping to a regional review board and then, if still unsatisfied, to the Commissioner of Health is unpersuasive. Not only is Blue Cross itself not an administrative agency, but the regional review board provided for under article IX of the formula is part of the contract between the parties and not the Commissioner of Health's regulations. Since the Hospital does not seek to review the

---

4. The Hospital terminated its contract with Blue Cross as of November 30, 1977, because of its dissatisfaction with its 1976 reimbursement rate.

actions of the Commissioner of Health, the four-month Statute of Limitations for article 78 proceedings is also inapplicable (see *Solnick v Whalen,* 49 NY2d 224, 232). The six-year Statute of Limitations for contract actions applies to the Hospital's causes of action and, thus, its complaint is timely.

The Hospital's first four causes of action complain of breaches of the express language of the contract between the parties. The fifth cause of action claims that Blue Cross breached its implied covenant of good faith and fair dealing in the contract (*Van Valkenburgh, Nooger & Neville v Hayden Pub. Co.,* 30 NY2d 34, cert den 409 US 875). Blue Cross has failed to establish conclusively that the Hospital's causes of action are without merit and, accordingly, they should not have been dismissed by Special Term upon Blue Cross' CPLR 3211 (subd [a]) motion to dismiss (*Rovello v Orofino Realty Co., supra*). We are not concerned with the possibility of plaintiff's ultimate success but solely with whether it has a cause of action (*People v Penn Cent. Co.,* 33 AD2d 860). Since all five of the Hospital's causes of actions are based on Blue Cross' alleged breach of contract, there is no need to join either the Commissioner of Health or Superintendent of Insurance as necessary parties to this action.

The order appealed from should be reversed.

DILLON, P. J., HANCOCK, JR., DENMAN and SCHNEPP, JJ., concur.

Order unanimously reversed, with costs, and motion denied.