**GROUP HEALTH INCORPORATED, Plaintiff,**

v.

**BLUE CROSS ASSOCIATION and Blue Cross/Blue Shield of Greater New York, Defendants,**

and

**United States Department of Health and Human Services, Intervenor-Defendant.**

**No. 83 Civ. 7567 (PKL).**

United States District Court, S.D. New York.

Aug. 16, 1985.

DeForest & Duer, New York City, for plaintiff; John M. O'Connor and Mark Weldon, of counsel.

Breed, Abbott & Morgan, New York City, for defendants; Robert A. Bicks and Alan C. Drewsen, of counsel.

Rudolph W. Giuliani, U.S. Atty., S.D. N.Y., New York City, for intervenor-defendant; Susan E. Harkins, Asst. U.S. Atty., and James E. Healey, Asst. Reg. Atty., Dept. of Health and Human Services, of counsel.

## OPINION

LEISURE, District Judge:

Plaintiff, Group Health Incorporated ("GHI"), seeks damages from defendants Blue Cross/Blue Shield of Greater New York ("Blue Cross") and Blue Cross and Blue Shield Association (the "Association") (collectively referred to as "Defendants"). GHI alleges harm suffered from disallowance of Medicare and Blue Cross reimbursement for certain costs allegedly incurred by Hillcrest General Hospital ("Hillcrest") in 1974–1980, the years GHI owned Hillcrest. GHI has asserted claims for negligence, misrepresentation and breach of warranty of authority against defendants Blue Cross and the Association. Blue Cross is sued in two capacities: as a private insurer, and as the fiscal intermediary for the federal government under the Medicare program. The Association is sued in its capacity as principal of Blue Cross acting as a fiscal intermediary.

Defendants have moved for an order granting them summary judgment pursuant to Fed.R.Civ.P. 56, on GHI's first through fifth claims, and an order dismissing the sixth through eighth claims, pursuant to Fed.R.Civ.P. 12(h)(3), on the basis that this Court lacks subject matter jurisdiction because GHI has failed to exhaust administrative remedies. For the reasons stated below, Defendants' summary judgment motion is denied and the Rule 12(h)(3) motion to dismiss is granted.

## FACTUAL BACKGROUND

The sequence of events and many of the facts giving rise to the instant action have been described in two opinions previously rendered by judges of this Court. *Group Health Inc. v. Schweiker*, No. 80 Civ. 6163 (S.D.N.Y. Mar. 22, 1982); *Group Health Inc. v. Blue Cross Ass'n*, 587 F.Supp. 887 (S.D.N.Y.1984). Familiarity with these decisions is assumed. In the first opinion, Judge Carter affirmed the decision of the Provider Reimbursement Review Board ("PRRB") of the United States Department of Health and Human Services ("HHS"). The PRRB affirmed Blue Cross' decision to disallow reimbursement of certain interest expenses claimed by Hillcrest. The Court of Appeals, by an unpublished opinion, affirmed Judge Carter's decision. The Supreme Court denied GHI's petition for a writ of certiorari.

Thereafter GHI commenced this action in New York State Supreme Court. The complaint alleges that GHI is a not-for-profit corporation organized and existing under Article IX–C of the New York Insurance Law. That status subjects GHI's activities to regulation by New York's Superintendent of Insurance. When GHI proposed to expend subscriber funds to acquire Hillcrest, it was required to obtain prior Insurance Department approval. Such approval was granted conditionally upon whether a return on those funds would be included in the calculation of third-party reimbursement rates applicable to Hillcrest. Before GHI purchased Hillcrest in February 1974, the complaint alleges, GHI requested advice of Blue Cross as to whether a rate of return on the funds GHI used to purchase Hillcrest could be included in the calculation of Hillcrest's Medicare and Blue Cross reimbursement rates.

Blue Cross is also an Article IX–C corporation. Before it could amend its reimbursement formula to permit it to reim-

burse for a return on equity invested in a hospital by an Article IX–C corporation, it had to receive approval from the New York Insurance Department. Blue Cross, in a letter dated June 11, 1974, from Lawrence P. Cafasso, Director of Blue Cross Provider Reimbursement Division, informed GHI that a return of nine percent on the funds used to purchase Hillcrest would be included when calculating Hillcrest's Medicare and Blue Cross reimbursement rates. In 1979, at the insistence of HHS, Blue Cross disallowed the return for Medicare and Blue Cross reimbursement purposes and subsequently recouped from GHI any amounts previously paid to it that were attributable to the return on the invested funds.

GHI commenced this action in New York State Supreme Court. GHI's first claim alleges that Defendants were negligent in failing to consult HHS before rendering such advice to GHI. The second claim alleges that Blue Cross negligently and falsely represented that it had the authority to make such a determination. The third claim alleges that Blue Cross warranted it was authorized to act as the agent for HHS in determining whether the return would be reimbursable under the Medicare program. The fourth and fifth claims seek to hold the Association liable for the acts and omissions of its agent and sub-contractor Blue Cross and for failing in its duty to properly supervise Blue Cross' activities. The sixth through eighth claims allege that Blue Cross breached its agreement with GHI by refusing to include the rate of return in the calculation of the Blue Cross reimbursement rate and that Blue Cross is estopped from changing its position in that regard.

Defendants removed the action to federal court and Judge Sweet denied GHI's motion to remand. Judge Sweet ruled that Blue Cross' actions were taken under color of governmental authority in that Blue Cross was acting as a fiscal intermediary on behalf of HHS and therefore the matter must be resolved in federal court. *Group Health Inc. v. Blue Cross Ass'n*, 587 F.Supp. at 891. In the same opinion Judge

Sweet granted the motion of HHS to intervene under Fed.R.Civ.P. 24(b)(2) and to consolidate GHI's separate action against HHS.

GHI has pursued administrative review of its Blue Cross rates and the New York Department of Health has been conducting hearings on the matter.

## MOTION FOR SUMMARY JUDGMENT

■ Defendants argue first that, as a matter of law, GHI was not entitled to rely on Blue Cross' advice concerning the calculation of the Medicare reimbursement rate, citing *Heckler v. Community Health Services of Crawford County, Inc.*, 467 U.S. 51, 104 S.Ct. 2218, 81 L.Ed.2d 42 (1984) (hereinafter *Community Health Services*). Second, GHI purchased Hillcrest before Blue Cross ruled in the Cafasso letter that Medicare reimbursement for the return on equity would be permitted. Consequently, no reliance on the alleged negligent misrepresentation was possible when GHI purchased Hillcrest. Third, Defendants argue, in the event GHI had relied justifiably on any representation of Blue Cross, GHI's claims against Defendants are barred under the principles of sovereign immunity. Defendants are sued in their capacity as fiscal intermediaries acting on behalf of HHS, and according to the Medicare regulations, HHS is the real party in interest. Fourth, HHS submitted a memorandum of law in support of Defendants' summary judgment in which it argues that Defendants are protected by the doctrine of official immunity.

Under the plain language of Rule 56(c), a court may grant a motion for summary judgment only if the moving party successfully demonstrates that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. *See, e.g., Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157, 90 S.Ct. 1598, 1608, 26 L.Ed.2d 142 (1970); *Patrick v. LeFevre*, 745 F.2d 153, 158 (2d Cir.1984); *PPX Enterprises, Inc. v. Audiofidelity, Inc.*, 746 F.2d 120, 123 (2d Cir.1984) (uncer-

tainty about any material fact defeats the motion). Ambiguities must be viewed in the light most favorable to the party opposing summary judgment. *Project Release v. Prevost*, 722 F.2d 960, 968 (2d Cir.1983). The burden of demonstrating the absence of any material fact genuinely in dispute rests on the moving party. *Adickes*, 398 U.S. at 157, 90 S.Ct. at 1608; *Heyman v. Commerce & Industry Insurance Co.*, 524 F.2d 1317, 1320 (2d Cir.1975). Because summary judgment is a "drastic device" it should be exercised with caution where, as here, one party has yet to complete pretrial discovery.[1] *See, e.g., Gary Plastic Packaging Corp. v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 756 F.2d 230, 236 (2d Cir.1985); *National Life Insurance Co. v. Solomon*, 529 F.2d 59, 61 (2d Cir.1975). Summary judgment, however, will not be denied merely because of conclusory allegations or denials by the opposing party. *JSP Agency, Inc. v. American Sugar Refining Co. of New York*, 752 F.2d 56, 59 (2d Cir.1985); *SEC v. Research Automation Corp.*, 585 F.2d 31, 33 (2d Cir.1978).

### Was GHI Entitled To Rely On Blue Cross' Representations?

As summarized above, defendants argue that under the authority of *Community Health Services, supra,* a health care provider participating in Medicare is not entitled to rely upon the policy judgment of a mere conduit acting on behalf of the Secretary of HHS (hereinafter also collectively referred to as "HHS"). Under 42 U.S.C. § 1395h(a) a fiscal intermediary is required to provide consultative services to providers to enable them to establish and maintain fiscal records, to serve as a conduit for any information or instructions furnished to it by HHS and *to serve as a channel of communication from providers to HHS.*

The Supreme Court in *Community Health Services* stated that a health care provider has a duty to familiarize itself with the legal requirements for cost reimbursement and the nature of and limitations on the role of a fiscal intermediary. A fiscal intermediary, according to the rele-

vant statutes and regulations and the reimbursement manual, acts merely as a conduit and may not resolve policy questions. 104 S.Ct. at 2226. The Court found that the health care provider in *Community Health Services* was satisfied with the policy judgment of a mere conduit and "made no attempt to have the question resolved by [HHS]." *Id.* Consequently, the fiscal intermediary's advice was not given under circumstances conducive to reliance giving rise to estoppel against HHS. The reasonableness of the reliance was further undermined by the oral nature of the intermediary's advice. In the context of a complex program such as Medicare, in which the need for written records is manifest, reliance upon oral advice is unreasonable. *Id.*

The instant action is distinguishable from *Community Health Services* on several grounds. First, the issue there was whether the government could be estopped from recovering funds expended by a health care provider in reliance on an incorrect interpretation of the Medicare regulations given by a responsible government agent. *Id.* at 2220. As the Supreme Court stated, "the Government may not be estopped on the same terms as any other litigant." *Id.* at 2224. The instant issue is whether a health care provider can hold a fiscal intermediary liable for the intermediary's own negligence. *See, e.g., Rochester Methodist Hospital v. Travelers Ins. Co.*, 728 F.2d 1006 (8th Cir.1984); *Hospital San Jorge, Inc. v. Blue Cross Ass'n*, Medicare & Medicaid Guide (CCH) ¶ 28,306 (D.P.R.1976). No attempt is being made here to estop HHS from recoupment of expenditures erroneously made. Indeed, GHI litigated that issue with HHS and lost.

Second, GHI received a *written* statement from Blue Cross that the return would constitute a reimbursable cost for purposes of Medicare. The fact that the letter was tendered subsequent to the February acquisition does not render speculative GHI's reliance on the Cafasso letter.

---

**1.** Discovery has been held in abeyance pending the Court's decision on the instant motion.

GHI alleges that it could have restructured the financing or sold Hillcrest if it was informed in June 1974 that the rate of return on the funds used to purchase Hillcrest was not a reimbursable cost.

GHI's argument in this regard is factually supported by a letter from Lawrence O. Monin, First Deputy Superintendent, State of New York Insurance Department, addressed to Dr. George Melcher, President of GHI, dated February 15, 1974. In that letter Monin qualified the Insurance Department's approval of GHI's application to acquire Hillcrest on two conditions. First, that the proposed amendment to the Blue Cross Reimbursement Formula had to be certified by the Commissioner of Health and approved by the Superintendent of Insurance. Second, if, as actually occurred, such approvals were not forthcoming, GHI had to obtain a non-recourse mortgage in the minimum amount of $2,000,000 within "ninety days *after* acquisition of the hospital." (Emphasis added). In other words, if Hillcrest were not permitted to include in its prospective Blue Cross reimbursement rates the return on equity, GHI would have ninety days after the acquisition to restructure the financing. This certainly raises a reasonable inference that GHI could have restructured the financing again or even sold Hillcrest if Blue Cross had determined in June, 1974 that the rate of return was not a reimbursable cost for Medicare purposes.

Nevertheless, Defendants argue that all communications between the parties before the Cafasso letter related to Blue Cross reimbursement rates only. They claim that the Cafasso letter was the first time the topic of Medicare reimbursement rates was discussed. However, a letter dated March 26, 1974, from William F. McCann, Assistant Commissioner of the New York State Department of Health, to James C. Ingram, Division Vice President, Provider Reimbursement of Blue Cross, states that "in establishing reimbursement rates for the hospital purchased by GHI, it is anticipated that the major third party payors will include their proportionate shares of interest paid to GHI subject to any specific third party formula limitations as to reasonableness and amount." Consequently, several months before sending the Cafasso letter, Blue Cross was aware that the reimbursement arrangement for which it was seeking approval would have to be acceptable to other third party payors, such as Medicare. Based upon this letter, it is certainly not beyond argument at this stage of the litigation that there was communication between GHI and Blue Cross concerning how the financing structure would be interpreted under the Medicare regulations.

The third ground on which *Community Health Services* may be distinguished concerns the issue of whether it was reasonable for GHI to rely on the advice of Blue Cross even though Blue Cross was only a conduit for communications between GHI and HHS. "It is undisputed that correct administrative practice required [Blue Cross] to refer [GHI's] inquiry to [HHS] for a definitive answer." *Community Health Services*, 104 S.Ct. at 2222. Unlike *Community Health Services*, where neither the provider nor the intermediary sought further advice when the question of interpretation initially arose, both parties in the instant case sought rulings from the New York State Departments of Insurance and Health concerning the contemplated arrangement. Such initial inquiry was logical, given the restrictions imposed by state law regarding the use of subscribers' funds. Such efforts raise a question of fact whether it was reasonable for GHI to believe that Blue Cross had likewise referred the question to HHS, especially in light of the written advice rendered by Blue Cross. "Written advice, like a written judicial opinion, requires its author to reflect about the nature of the advice that is given ..., and subjects that advice to the possibility of review, criticism and reexamination." *Id.* at 2227. In this regard, Blue Cross did not consult with HHS as to whether the arrangement would pass scrutiny under Medicare's related party regula-

tions[2] because "the whole transaction had been thoroughly reviewed and approved by two different agencies of the state government." Testimony of James C. Ingram, PRRB Hearing, June 10, 1980, at 0216–17. This issue is significant because 42 U.S.C. § 1395h(a)(2)(A) expressly states that intermediaries are to "serve as a channel of communication from providers to the Secretary."

The cumulative effect of these facts and circumstances is to distinguish the instant case from *Community Health Services* and raise material issues of fact. GHI is not seeking to estop HHS from recovering money erroneously paid out. Blue Cross rendered written advice to GHI that the arrangement was acceptable under Medicare's regulations. Finally, GHI may have arranged for alternate financing had Blue Cross indicated in June, 1974 that Medicare would not reimburse Hillcrest for the return on its investment.[3]

### Sovereign Immunity

Next, defendants argue that because fiscal intermediaries act on behalf of HHS in performing their contractual undertakings, HHS is the real party in interest in this

---

**2.** 42 C.F.R. § 405.419(b) & (c) (1979).

**3.** Defendants further argue that GHI failed to adhere to the terms of the approved arrangement by not carrying the investment on its books as a mortgage-loan transaction and not enforcing its right to interest payments from Hillcrest. They claim this precludes GHI from holding Defendants responsible for GHI's losses. Significant in this regard is the September 29, 1978 letter from Jacqueline G. Wilson, Regional Medicare Director, to Peter L. Hutchins, Senior Vice-President-Finance of Blue Cross. In this letter, Ms. Wilson states that the failure to pay interest was "merely additional evidence" that the arrangement was not arms-length, thereby making the return on investment a non-reimbursable cost. Ms. Wilson concluded that Medicare was "unable to understand how Blue Cross could have ruled that the 'loan' transaction is a reimbursable cost." In other words, it was the relationship between GHI and Hillcrest that disqualified the transaction, not the failure to pay interest.

**4.** This position appears to be a variation of the so-called government contractor defense to liability for injuries to another caused in the course of performing work on behalf of the

---

lawsuit. 42 C.F.R. § 421.5(b) (1984).[4] The fiscal intermediary, Blue Cross, therefore, is wrapped in the protective mantle of the government's sovereign immunity, barring GHI's suit. The cases that Defendants have cited in support of this position[5] provide little guidance in this action, however, because, as stated by the court in *Rochester Methodist Hospital v. Travelers Ins. Co.*, 728 F.2d 1006 (8th Cir.1984), "in none of these cases was there proof that the intermediary acted beyond the scope of its authority." 728 F.2d at 1015. *See also, Hospital San Jorge, Inc. v. Blue Cross Ass'n*, Medicare & Medicaid Guide (CCH) ¶ 28,306, at 9074–75 (D.P.R.1976). Also, in each of the cases cited by Defendants, the fiscal intermediary disallowed a claim for reimbursement. None involved advice rendered prospectively *before* a claim for reimbursement was made as Blue Cross did in the instant action.

Plaintiff alleges that Defendants engaged in tortious activity and acted beyond the scope of their authority. According to the Supreme Court, a fiscal intermediary has neither actual nor apparent au-

---

government. *See Yearsley v. W.A. Ross Const. Co.*, 309 U.S. 18, 60 S.Ct. 413, 84 L.Ed. 554 (1940). In *Yearsley* the Supreme Court stated that a government contractor can be held liable for conduct causing injury to another if it is found "that he exceeded his authority." *Id.* at 21, 60 S.Ct. at 414. *Accord Ove Gustavsson Contracting Co. v. Floete*, 299 F.2d 655, 660 (2d Cir.1962), *cert. denied*, 374 U.S. 827, 83 S.Ct. 1862, 10 L.Ed.2d 1050 (1963). *See generally In re "Agent Orange" Product Liability Litigation*, 506 F.Supp. 762, 792–94 (E.D.N.Y.), *rev'd on other grounds*, 635 F.2d 987 (2d Cir.1980), *cert. denied*, 454 U.S. 1128, 102 S.Ct. 980, 71 L.Ed.2d 116 (1981).

**5.** *Peterson v. Weinberger*, 508 F.2d 45 (5th Cir.), *cert. denied*, 423 U.S. 830, 96 S.Ct. 50, 46 L.Ed.2d 47 (1975); *Matranga v. Travelers Ins. Co.*, 563 F.2d 677 (5th Cir.1977); *Pine View Gardens, Inc. v. Mutual of Omaha Ins. Co.*, 485 F.2d 1073, 1074–75 (D.C.Cir.1973); *Arzt v. Blue Cross and Blue Shield of Greater New York*, No. 78 Civ. 5723 (S.D.N.Y. Oct. 29, 1982); *Vanderberg v. Carter*, 523 F.Supp. 279 (N.D.Ga.1981), *aff'd*, 691 F.2d 510 (11th Cir.1982); *Johnson v. Johnson*, 332 F.Supp. 510, 511 (E.D.Pa.1971); *Kuenstler v. Occidental Life Ins. Co.*, 292 F.Supp. 532, 537 (C.D.Cal.1968).

thority to render an interpretation of the Medicare regulations. *Community Health Services,* 104 S.Ct. at 2226 n. 21. Where the law limits a government agent's powers "his actions beyond those limitations are considered individual and not sovereign actions." *Larson v. Domestic & Foreign Corp.,* 337 U.S. 682, 689, 69 S.Ct. 1457, 1461, 93 L.Ed. 1628 (1949). Consequently, a material question of fact exists as to whether Blue Cross was acting within the scope of its authority in giving the advice to GHI. *Slotkin v. Citizens Casualty Co. of New York,* 614 F.2d 301, 317 (2d Cir.), *cert. denied,* 449 U.S. 981, 101 S.Ct. 395, 66 L.Ed.2d 243 (1980).

The papers presented to the Court on this motion indicate there is merit to GHI's allegations in this regard. During the time that GHI acquired Hillcrest, Blue Cross itself was interested in buying hospitals with subscribers' funds. *See* Testimony of James C. Ingram, PRRB hearing, June 10, 1980, at 0210–11, 0222, 0272. An August 30, 1978 report prepared by the Medicare Office of Program Integrity commented on the actions of Blue Cross as follows:

> The parties involved in making the decision [Blue Cross and the New York State Departments of Health and Insurance] appeared to over extend their authority and in fact may have acted improperly in this situation.
>
> \* \* \* \* \* \*
>
> By ruling on a complex Medicare reimbursement situation without consulting the Medicare Bureau, Blue Cross may have put its intermediary role second to its own private plan's best interest. This is evidenced by the fact that at the time of the Hillcrest purchase, Blue Cross was interested in purchasing hospitals itself. Blue Cross may have taken an active role and even bent its interpretations of the reimbursement regulations to suit a situation that would act as a catalyst for a reimbursement ruling it could benefit from in the future.

Judge Carter referred to this possible conflict of interest when he denied GHI's application to overturn the decision of the PRRB, stating that "the intermediary advise[d] the provider in large part from the perspective of a competitor seeking ways to achieve the agreed upon result for itself...." *Group Health Inc. v. Schweiker,* No. 80 Civ. 6163, slip op. at 11 (S.D.N.Y. Mar. 22, 1982).

Where there are specific allegations that Blue Cross did not act on direct instructions from HHS but rather acted beyond the scope of its authority, summary judgment on the sovereign immunity claim is inappropriate. The effect of such allegations in the context of such a motion was recognized and aptly described by Judge Haight in *Arzt v. Blue Cross & Blue Shield of Greater New York,* No. 78 Civ. 5723 (S.D.N.Y. Oct. 29, 1982) when he granted summary judgment to Blue Cross on a claim that Blue Cross participated in a conspiracy to force a health care provider out of business. Judge Haight stated:

> [T]he only reasonable conclusion that can be drawn is that Blue Cross, as fiscal intermediary, is being sued for actions it took because of its statutory powers as a fiscal intermediary, *and not because of any alleged negligence in failing to exercise properly those duties.* The acts upon which Blue Cross's liability is predicated are the withholding of Medicare payments....

*Id.,* slip op. at 28 (emphasis added).

Notwithstanding the allegations that Blue Cross acted beyond the scope of its authority, Defendants and HHS argue that sovereign immunity applies in any event because an indemnity agreement would require any judgment against Defendants to be paid ultimately by HHS. This argument is based upon the principle that a lawsuit is against the government regardless of who is named as a defendant if the relief sought would be paid from the public treasury. *See, e.g., Stafford v. Briggs,* 444 U.S. 527, 542 n. 10, 100 S.Ct. 774, 784 n. 10, 63 L.Ed.2d 1 (1980); *Dugan v. Rank,* 372 U.S. 609, 620, 83 S.Ct. 999, 1006, 10 L.Ed.2d 15 (1963); *Falls Riverway Realty, Inc. v. City of Niagara Falls,* 754 F.2d 49, 55–56 (2d Cir.1985).

Pursuant to 42 C.F.R. § 421.5(b), HHS has agreed to indemnify Defendants and pay any judgments, except those rendered for criminal conduct, fraud or gross negligence against the Association or Blue Cross resulting from the performance of their contractual obligations. Thus, if Defendants are found liable in this action, HHS will ultimately pay. According to the principle set forth above, this would trigger the government's sovereign immunity.

While this argument has some facial appeal, it has been rejected by courts because an indemnity agreement between the government and its agents does not affect the rights of third parties. *Rochester Methodist Hospital,* 728 F.2d at 1012–14 (citing *Brady v. Roosevelt Steamship Co.,* 317 U.S. 575, 583, 63 S.Ct. 425, 429, 87 L.Ed. 471 (1943) ("The rights of principal and agent *inter se* are not the measure of the rights of third persons against either of them for their torts.")). "A government may not manufacture immunity for its employees [and contractors] by agreeing to indemnify them." *Spruytte v. Walters,* 753 F.2d 498, 512 n. 6 (6th Cir.1985). *Accord Demery v. Kupperman,* 735 F.2d 1139, 1146–47 (9th Cir.1984), *cert. denied,* —— U.S. ——, 105 S.Ct. 810, 83 L.Ed.2d 803 (1985); *Downing v. Williams,* 624 F.2d 612, 626 (5th Cir.1980), *vacated on other grounds,* 645 F.2d 1226 (5th Cir.1981); *Foster v. Day & Zimmermann, Inc.,* 502 F.2d 867, 875 (8th Cir.1974); *Whitaker v. Harvell-Kilgore Corp.,* 418 F.2d 1010, 1014 (5th Cir.1969). *Cf.* L. Tribe, *American Constitutional Law* § 3–35, at 132–33 n. 22 (1978). The very existence of an indemnity agreement undercuts the argument that as a consequence intermediaries are protected by sovereign immunity. "[I]f sovereign immunity was intended ... there would be no necessity of an indemnity agreement...." *Whitaker,* 418 F.2d at 1014.

Based upon the foregoing, GHI's claims against Defendants are not barred by sovereign immunity.

### Official Immunity

■ HHS argues in its memorandum of law in support of Defendants' summary judgment motion that GHI's claims are barred under the doctrine of official immunity. The official immunity doctrine provides that federal officials are absolutely immune from liability for common-law torts allegedly committed in the performance of official duties that require the exercise of judgment or discretion. *Barr v. Matteo,* 360 U.S. 564, 79 S.Ct. 1335, 3 L.Ed.2d 1434 (1959). The purpose of this judicially created rule is to ensure that government officials are able to exercise their duties free from the fear of damage suits arising out of acts done in the course of those duties. Government officials would be free of the threat of lawsuits "which might appreciably inhibit the fearless, vigorous, and effective administration of policies of government." *Id.* at 571, 79 S.Ct. at 1339.

Official immunity has been held to protect all executive officials regardless of rank, provided the official was acting within the outer limits of his authority and the act involved the exercise of judgment or discretion. *Id.* at 572–73, 79 S.Ct. at 1340.

> The privilege is not a badge or emolument of exalted office, but an expression of a policy designed to aid in the effective functioning of government. The complexities and magnitude of governmental activity have become so great that there must of necessity be a delegation and redelegation of authority as to many functions, and we cannot say that these functions become less important simply because they are exercised by officers of lower rank in the executive hierarchy.

*Id.* (footnote omitted). The courts have applied the Supreme Court's broad formulation of the doctrine to the extent that it has been held to apply to a nurse supervisor at a Veterans Administration hospital who was sued for writing an allegedly libelous incident report. *Newkirk v. Allen,* 552 F.Supp. 8 (S.D.N.Y.1982). This result was foretold by Justice Brennan in his dissenting opinion in *Barr v. Matteo* when he

stated that the approach set forth in Justice Harlan's plurality opinion would "clothe with immunity the most obscure subforeman on an arsenal production line who has been delegated authority to hire and fire and who maliciously defames one he discharges." 360 U.S. at 587, 79 S.Ct. at 1348. *See also* Gray, *Private Wrongs of Public Servants*, 47 Cal.L.Rev. 303, 337 (1959) (hereinafter *Private Wrongs* ).

Cases where claims of official immunity have been upheld involved defamation, false arrest or imprisonment, and malicious prosecution. *See Norton v. McShane*, 332 F.2d 855, 859–60 n. 5 (5th Cir.1964), *cert. denied*, 380 U.S. 981, 85 S.Ct. 1345, 14 L.Ed.2d 274 (1965); *Private Wrongs*, 47 Cal.L.Rev. at 337–38 n. 223. The doctrine has been held to apply when negligent misrepresentation has been alleged. *See, e.g., Claus v. Gyorkey*, 674 F.2d 427 (5th Cir. 1982); *Sowders v. Damron*, 457 F.2d 1182 (10th Cir.1972). The application of the doctrine to persons performing work at so many levels of government and in such far ranging circumstances has led one commentator to suggest that the growth of the immunity rule is due to "its convenience as a form of judicial shorthand to dispose, at the pleading stage, cases which obviously have little merit." *Private Wrongs*, 47 Cal.L.Rev. at 338. *Cf.* Annot., 9 A.L.R.3d 382, 387 (1966).

HHS argues that since Blue Cross and the Association were acting as agents of HHS in the role of Medicare fiscal intermediaries they should be deemed federal officials for purposes of immunity. Such private entities performing federal functions as agents of the government therefore should be protected. GHI, for its part, contends that it is incorrect to protect Blue Cross and the Association with official immunity.

According to the balancing test that is applied to determine whether extension of immunity is appropriate, the court must weigh the injustice that results from denying a plaintiff a remedy for its injury against the pressures that would be placed upon an individual serving as a federal official if that individual could be held liable for monetary damages for actions authorized by the government. *Barr v. Matteo*, 360 U.S. at 565, 570–71, 79 S.Ct. at 1336, 1338–39. GHI contends that the rationale behind the official immunity rule does not apply in this case. The Defendants are large private insurance corporations which contracted to perform services for the Department. Defending damage lawsuits arising out of their roles as fiscal intermediaries would not be any different than defending lawsuits in connection with their own hospital insurance programs. GHI argues that, since defending those suits does not divert time that would otherwise be devoted to government service, the same considerations necessarily apply to the defense of lawsuits arising out of the performance of duties in the Medicare program. Likewise, the cost of defending lawsuits are a cost of doing business and are figured into the prices charged and the amounts bid for contracts.

The case law indicates that it is appropriate to consider a private person a government official if the conduct at issue is instigated and directed by federal officers. *Reuber v. United States*, 750 F.2d 1039, 1063–64 (D.C.Cir.1984) (Bork, J., concurring). *Cf. Falls Riverway Realty*, 754 F.2d at 57 (city agency an agent "only if the United States supervised the day-to-day operations"). In *Blum v. Campbell*, 355 F.Supp. 1220 (D.Md.1972), a defamation action, the manager of an apartment complex under contract to the Federal Housing Administration was deemed entitled to official immunity. The contract with FHA provided that the day-to-day administrative details of operation would be under supervision of the local FHA office. The court found that the FHA closely supervised the company's activities during the period involved and the company "did no more than carry out FHA instructions." *Id.* at 1224. As a result, the defendants "were acting as agents under the direct supervision and control of the FHA and not as independent contractors." *Id.*

In *Becker v. Philco Corp.*, 372 F.2d 771 (4th Cir.), *cert. denied*, 389 U.S. 979, 88 S.Ct. 408, 19 L.Ed.2d 473 (1967), a defense contractor filed a report with the government which resulted in suspension of plaintiff's security clearances. The defense contract required the company to keep the government advised of suspected security risks. The court held that the communications were privileged under *Barr v. Matteo* because the contractual requirement transformed the company into an agent of the government. 372 F.2d at 774–75.

In *McManus v. McCarthy*, 586 F.Supp. 302 (S.D.N.Y.1984), a libel action, cadets at the Merchant Marine Academy were deemed to be performing a federal function under the control of federal officers because they acted under the direct supervision and control of the Academy's superior officers, who are federal employees. *Id.* at 305. Likewise, in *Logiurato v. Action*, 490 F.Supp. 84 (D.D.C.1980), medical examiners who acted under Peace Corps direction and control were protected by official immunity.

In *Bushman v. Seiler*, 755 F.2d 653 (8th Cir.1985), the court extended official immunity to a consultant for a Medicare carrier sued for libel due to a report he filed at the carrier's request as part of an audit investigation. The court recognized that Medicare intermediaries "can" be governmental agents for immunity purposes and that the defendant's relationship to the Medicare program "may" shield him with official immunity. *Id.* at 655. The audit was conducted pursuant to 42 C.F.R. § 421.200(e) and the report was for internal use only. Although Seiler's link to the federal government was indirect, the court held that "under the circumstances of this case, official status should be extended to Seiler as a consultant to a Medicare carrier." *Id.*

*Bushman* would appear to provide support for the contentions of HHS. But important considerations not present in this case entered into the court's decision. The

court acted on "a recognition that public criticism of government operation should be encouraged." *Id.* at 656. Unless such communications are privileged, government contractors who are aware of real or imaginary shortcomings in connection with government activity would be dissuaded from communicating their concerns to the proper authority. *Id.* Thus, in *Bradley v. Computer Sciences Corp.*, 643 F.2d 1029 (4th Cir.), *cert. denied*, 454 U.S. 940, 102 S.Ct. 476, 70 L.Ed.2d 248 (1981), the court held that a letter written by a private corporation to the Defense Communications Agency about the conduct of one of the agency's employees was deemed qualifiedly privileged under the petition clause of the First Amendment. *Id.* at 1033. Although the defendant was a government contractor, the court did not extend it official immunity, while it did extend such protection to the government defendants.[6]

These cases demonstrate that a court must scrutinize the particular conduct at issue and weigh whether it is appropriate under the circumstances to protect the private party. In each case where a government contractor was involved such status was not significant in the outcome. Rather, the circumstances surrounding the particular conduct at issue were important to the determination that official immunity would apply.

■ Turning to the facts of this case, it is apparent that the defendants cannot be considered government officials. The conduct complained of was not undertaken at the instigation and direction of the government. To the contrary, Blue Cross acted wholly on its own, without direction or guidance from HHS. Although 42 C.F.R. § 421.5(b) provides that intermediaries act on behalf of HHS, that regulation does not elevate the intermediaries to the status of government officials so that they would be immune for their own tortious conduct. *Cf. Rochester Methodist Hospital*, 728 F.2d at 1014.

---

**6.** In *Bushman* the Eighth Circuit extended official immunity to the defendant rather than consider whether the defense of sovereign immunity applied. 755 F.2d at 655 n. 2 (citing *Rochester Methodist Hospital*, 728 F.2d at 1012–16).

If the intermediaries were to be endowed with official immunity, Congress was capable of expressly providing for such status. The legislative history indicates that Congress deemed it appropriate to permit the government to indemnify the intermediaries under certain circumstances, but it no where provides that the intermediaries shall enjoy official or sovereign immunity. *See* S.Rep. No. 404, 89th Cong., 1st Sess., *reprinted in* 1965 U.S.Code Cong. & Ad. News 1943, 1995 ("the Government would be expected to safeguard the interests of his contractual representatives with respect to their actions in the fulfillment of commitments under the contracts and agreements entered into by them with the Secretary."). Instead, Congress recognized that the intermediaries are independent contractors and are liable for their own torts and authorized the HHS to enter into indemnity agreements. It is significant that the agreements do not extend to judgments for criminal conduct, fraud or gross negligence resulting from the performance of the intermediaries' obligations, while official immunity confers an absolute immunity without regard to whether the conduct is willful or malicious. *See, e.g., Barr v. Matteo,* 360 U.S. at 571, 79 S.Ct. at 1339 (quoting *Gregoire v. Biddle,* 177 F.2d 579, 581 (2d Cir.1949), *cert. denied,* 339 U.S. 949, 70 S.Ct. 803, 94 L.Ed. 1363 (1950)). And, as was discussed with reference to Defendants' sovereign immunity claim, the existence of an indemnity agreement does not affect the rights of third parties.

Having determined that Defendants cannot be deemed government officials, it is unnecessary to decide whether Blue Cross was acting within the scope of its authority. Because a factual dispute exists with respect to this important issue it is likely that a decision on this issue would have to be deferred in any event, pending further factual development as to the exact scope of the authority of the fiscal intermediary. *See, e.g., Expeditions Unlimited Aquatic*

*Enterprises, Inc. v. Smithsonian Institution,* 566 F.2d 289, 295 (D.C.Cir.1977), *cert. denied,* 438 U.S. 915, 98 S.Ct. 3144, 57 L.Ed.2d 1160 (1978); *Kletschka v. Driver,* 411 F.2d 436, 449 (2d Cir.1969) ("A plea of official immunity cannot be sustained until a court has knowledge of the exact nature of the defendants' actions and the precise scope of their official duties."); *Liquori v. Alexander,* 495 F.Supp. 641, 648 (S.D.N.Y. 1980) (existence of factual dispute as to scope of authority requires further factual development).

### Liability of the Association

Defendants' motion for summary judgment on GHI's claim against the Association must be considered in the context of the facts, circumstances and legal principles discussed above with respect to Blue Cross. In addition, the Association may bear responsibility for the actions of Blue Cross in light of the Association's policy which discouraged · Blue Cross from approaching HHS directly for rulings on reimbursement matters. Testimony of James C. Ingram, PRRB Hearing, June 10, 1980, at 0227.

Accordingly, Defendants' motion for summary judgment on the first five claims is hereby denied.

### RULE 12(h)(3) MOTION

■ Blue Cross seeks to dismiss, pursuant to Fed.R.Civ.P. 12(h)(3),[7] GHI's sixth through eighth claims, which allege breach of contract against Blue Cross in its capacity as a private insurer. The basis for this motion is GHI has not exhausted the administrative procedures set forth by state law for review of Blue Cross reimbursement rates. Rules and regulations promulgated by the New York Department of Health provide for appeals to the Commissioner of Health by an individual hospital which seeks to challenge a certified rate. 10 N.Y.C.R.R. § 86–1.17(c) (1983).

GHI has pursued administrative review of its Blue Cross rates according to the

---

7.  Rule 12(h)(3) provides:
    Whenever it appears by suggestion of the parties or otherwise that the court lacks jurisdiction of the subject matter, the court shall dismiss the action.

procedures set forth in the Blue Cross formula and the regulations. The Department of Health administrative law judge conducting hearings on the matter has set forth the following as the "issues to be determined":

> What were the precise terms of the agreement between the State (representing the Departments of Health and Insurance plus Blue Cross and Blue Shield) and Hillcrest/GHI? Assuming, as was admitted, the agreement was to treat the Hillcrest/GHI investment as a loan, what if any, indicia of a loan had to be carried out by Hillcrest/GHI to consummate the agreement? ... [T]he ultimate question is this: .... can the State, by agreement, pay Medicaid funds it would not ordinarily have to pay under the statutes, regulations and existing guidelines?

The factual issues being presented at the administrative level, as set forth above, are similar to those raised by GHI's sixth through eighth claims.

The doctrine of exhaustion of administrative remedies is a "long settled rule of judicial administration that no one is entitled to judicial relief for a supposed or threatened injury until the prescribed administrative remedy has been exhausted." *Myers v. Bethlehem Shipbuilding Corp.*, 303 U.S. 41, 50–51, 58 S.Ct. 459, 463, 82 L.Ed. 638 (1938). A primary purpose for the rule is "the avoidance of premature interruption of the administrative process." *McKart v. United States*, 395 U.S. 185, 193, 89 S.Ct. 1657, 1662, 23 L.Ed.2d 194 (1969). Other purposes include permitting the agency best suited and possessing the necessary expertise to determine the questions at issue, permitting such agency to develop the necessary factual background upon which decisions should be based and conserving judicial resources. *Id.* at 194–95, 89 S.Ct. at 1662–63. The rule, which has been considered a limit of the court's subject matter jurisdiction, *White v. Shull*, 520 F.Supp. 11, 13 (S.D.N.Y.1981); *Fairchild, Arabatzis & Smith, Inc. v. Sackheim*, 451 F.Supp. 1181, 1184 (S.D.N.Y. 1978), has been applied to actions similar to this one begun by hospitals challenging decisions on reimbursement rates. *Sunrest Nursing Home, Inc. v. Whalen*, 99 A.D.2d 206, 473 N.Y.S.2d 34 (3d Dep't 1984); *Arnot-Ogden Memorial Hospital v. Blue Cross of Central New York, Inc.*, 92 A.D.2d 629, 459 N.Y.S.2d 950 (3d Dep't 1983); *Crouse-Irving Memorial Hospital v. Axelrod*, 82 A.D.2d 83, 442 N.Y.S.2d 338 (4th Dep't 1981).

Blue Cross argues that these interests would be served here if GHI exhausted its administrative rights before proceeding in court. First, there is an appeal of Blue Cross' reimbursement decision pending before a Department of Health administrative judge, whose decision will be reviewed by the Commissioner of Health. Requiring exhaustion would avoid premature interruption of the administrative process. Second, the state agency will be able to develop the factual background upon which the ultimate decision will be based. Third, the state agency is best suited and possesses the necessary expertise to determine the questions raised by GHI's appeal of Blue Cross' decision. Fourth, the controversy may be resolved in the administrative process and judicial intervention would be unnecessary.

GHI acknowledges that these general principles apply herein, but argues that the issues underlying the three claims for relief against Blue Cross are essentially contractual. As such, the prescribed administrative remedies need not be utilized or exhausted. *See, e.g., Mary Imogene Bassett Hospital v. Hospital Plan, Inc.*, 89 A.D.2d 240, 455 N.Y.S.2d 416 (4th Dep't 1982). Resort to administrative remedies was not required in the *Bassett Hospital* case, however, because the defendant's contract breach foreclosed the hospital's right to pursue its administrative remedies. *Id.* at 244, 455 N.Y.S.2d at 419. *See Arnot-Ogden Memorial Hospital*, 92 A.D.2d at 630, 459 N.Y.S.2d at 952. No such situation is presented here.

Due to plaintiff's failure to exhaust its administrative remedies, subject matter jurisdiction is lacking. Accordingly, GHI's

sixth through eighth claims are hereby dismissed pursuant to Rule 12(h)(3).

### CONCLUSION

Defendants' summary judgment motion to dismiss GHI's first five claims is denied. Defendants' motion to dismiss GHI's sixth through eighth claims for lack of subject matter jurisdiction is granted.

SO ORDERED.