## Insurance Co. of North America et al. v. Hopper.

(Decided March 13, 1934.)

TYE, SILER, GILLIS & SILER for appellants.
J. M. ROBSION for appellee.

OPINION OF THE COURT BY JUDGE CLAY—Affirming in part and reversing in part.

On March 7, 1931, the Insurance Company of North America and Indemnity Insurance Company of North America issued to H. C. Hopper a policy insuring two race horses, Dragon and Chum, against death. On May 14, 1931, Dragon died, and, liability having been denied, this suit was brought to recover on the policy. The trial resulted in a verdict and judgment for $2,500. The insurance companies appeal.

The jurisdiction of the Whitley circuit court, where

the trial took place, was properly challenged, and the first question presented is whether that court had jurisdiction. Appellants insist that under the construction placed on section 71, Civil Code of Practice, in Sun Mutual Ins. Co. v. Crist, 39 S. W. 837, 19 Ky. Law Rep. 305, the transaction took place with an agent either in Bourbon county or Fayette county, and this suit should have been brought in one of those counties. In view of our conclusion, we deem it unnecessary to determine where the transaction with the agent took place. Recently we have had occasion to review the question of venue in actions against insurance companies, and, after a careful consideration of sections 71 and 72, Civil Code of Practice, in the light of their history, we have reached the conclusion that section 71 is not exclusive, but is merely cumulative, and that an action against a foreign insurance company, having an office and place of business in this state, or a chief officer or agent residing in this state, may be brought in the county where the contract was to be performed. Ocean Accident & Guarantee Corporation v. Milford Bank, 236 Ky. 457, 33 S. W. (2d) 312. To the same effect is Torrent Lodge v. National Surety Co., 231 Ky. 302, 21 S. W. (2d) 439. Here in case of loss or injury the insurance was to be paid to the insured at his home in Corbin, Whitley county. In the circumstances the contract was to be performed there, and there can be no doubt that the Whitley circuit court had jurisdiction.

The further point is made that appellants were entitled to a peremptory instruction on the ground that Hopper did not employ a qualified veterinarian to attend the horse, and did not give immediate notice to the company of the illness or injury to the horse, as required by the policy. Dragon had suffered a, bowed tendon in the year 1929. On May 4, 1931, he rapped himself, from which there resulted a slight injury. A few minutes after the injury, an experienced veterinary surgeon was called to treat Dragon. The next day another veterinarian was called. The horse was then taken from Douglas Park to the Caperton Ranch near Louisville to rest up. At the request of Mr. Riddle, who had charge of the horses, the superintendent of the Caperton Ranch called in another veterinary surgeon to see Dragon on the morning of May 14th. On the same day appellants were notified by telegram of the injury, and about 1:15 p. m. May 14, Dr. Calldemeier, a veterinary

surgeon, was sent by appellants to examine Dragon. He found the horse in good shape, with the exception of a slight soreness and stiffness in his leg. About an hour afterward, the superintendent of the Caperton farm heard a noise in the barn where the horse had been placed. On going in he found that the horse had torn down the stall, and some of the witnesses testified that he had his head through the partition. The horse died in a few minutes. Appellants had a post mortem examination held by Dr. Calldemeier and Dr. Proctor and one of their executive officers. They found no evidence of poison or foul play. The horse's neck from his jaw back to his shoulder was badly bruised, and blood clots were found in his neck. It is clear from this evidence that Hopper did not fail to have the horse immediately examined by competent veterinary surgeons. On the contrary, two were employed immediately, and another was subsequently employed. But appellants insist that there was a failure to apprise them immediately of the horse's injury. If it had been made to appear that the horse's death was the result of the injury, a different question would be presented, but the evidence of all the experts shows that the horse's death on May 14th was not attributable in any way to the injury which he had received. On the contrary, Dr. Calldemeier testified that, when he examined the horse a few minutes prior to his death, his pulse, respiration, and temperature were all normal, and that the only defect or disability that he noticed was that the horse was slightly sore or stiff in the left fore leg just above the ankle. The only reasonable explanation of the horse's death is that he died from strangulation, and it is not perceived how this could have been avoided had appellants received immediate notice of his injury. Indeed, if anything could have been done, Dr. Calldemeier had ample opportunity to do it before the horse died. Clearly a failure immediately to report an injury, which did not cause the horse's death, did not have the effect of avoiding the policy.

By the policy the Indemnity Insurance Company of North America insured against death from '(a) natural causes; (b) accidents; (c) act of God; (d) act of man other than the owner, his servants, agents or employees, and without his or their knowledge, consent, or connivance; (e) destruction when necessary in the opinion of a qualified veterinarian immediately to relieve incurable

suffering. Instruction No. 1 authorized a verdict in favor of the insured if the horse Dragon died from any one of the four causes first mentioned. It is argued that the instruction is defective on the ground that there was no evidence that the horse died from natural causes, or from an act of God, or from an accident. As we construe the policy, it insures against death from all causes except the act of the owner, his servants, agents or employees, or the act of some other man with their knowledge, consent, or connivance. Hence, the only real issue in the case is whether the horse died from an act of the owner, his servants, agents or employees, or the act of another with their knowledge, consent, or connivance. That being true, the specification of the different causes was in no wise prejudicial to appellants.

Another contention is that the court erred in not permitting appellants to impeach the witness Riddle by showing that a few months after the death of the horse he stated to a witness in Cincinnati that the horse at the time of his death was worth only $500. Not only were the questions propounded the impeaching witness not in proper form, but, in view of the fact that there was substantial evidence that the horse was worth $2,500 at the time of his death other than that given by the witness sought to be impeached, we do not regard the exclusion of the impeaching evidence as prejudicial error.

Witnesses for appellant testified that on account of his injury the horse was worth only $500 at the time of his death. On the other hand, the witnesses for appellee testified that the injury to the horse was only slight, and did not materially affect his market value, and that he was worth at the time of his death from $2,500 to $3,500. Indeed, it was shown that he was sold for $3,500 to the insured, and shortly prior to the last accident the insured had a bona fide offer of $3,500 for the horse. In the circumstances it cannot be said that the verdict of $2,500 is flagrantly against the evidence.

Lastly, it is insisted that the Insurance Company of North America was entitled to a directed verdict on the ground that it was not liable under the policy.

The policy is in two parts. By its terms the Insurance Company of North America insured—

(a) Against loss or damage caused by fire or lightning at all times.

(b) Against loss or damage caused by fire, lightning, sinking, stranding, collision (the coming together of cars during coupling not to be deemed a collision), or derailment while in transit by steamship or railroad. Also

(c) Against marine perils while on ferries and/or in cars on transfers in connection therewith.

It is agreed this policy insures live stock only against (a) death; (b) destruction due to injuries which was necessary in the opinion of a qualified veterinarian to immediately relieve incurable suffering; provided (a) death, (b) injuries, were directly caused by perils insured sustained within the policy term. We think the concluding clause, "provided (a) death, (b) injuries, were directly caused by perils insured sustained within the policy term," confines the insurance on live stock to death or destruction due to injuries, etc., directly caused by fire, lightning, sinking, or the other perils theretofore enumerated. As the death of the horse "Dragon" was not caused by any of those perils, it follows that the Insurance Company of North America's motion for a peremptory instruction should have been sustained. However, inasmuch as the failure of the court to sustain the motion did not adversely affect the rights of the Indemnity Insurance Company of North America, there is no merit in its contention that it, too, is entitled to a reversal.

On the appeal of the Indemnity Insurance Company of North America the judgment is affirmed. On the appeal of the Insurance Company of North America the judgment is reversed, and cause remanded for a new trial not inconsistent with this opinion. One half the costs will be paid by the Indemnity Insurance Company of North America, and the other half by appellee.

Whole court sitting.