## New York Life Ins. Co. v. McCane.

Dec. 13, 1938.

As Modified on Denial of Rehearing Feb. 21, 1939.

BRUCE & BULLITT, WM. MARSHALL BULLITT and WM. H. ABELL for appellant.

HARRISON, VINCENT & SAMUELS for appellee.

OPINION OF THE COURT BY JUDGE CAMMACK—Reversing.

Appellant, New York Life Insurance Company, is appealing from a judgment for $675 in favor of Mrs. Nancy McCane, appellee. The judgment covers $10 monthly disability benefits from January 2, 1932, to June, 1937, under the provisions of a life insurance policy containing double indemnity and disability provisions, which was issued by the Company on the life of Mrs. McCane. Appellant urges reversal because (1) the lower court erroneously allowed lay witnesses to diagnose Mrs. McCane's alleged illness and to testify as to the condition of her health and her ability to perform work; (2) the Company's motion for a peremptory instruction should have been sustained because any disability benefits which may have accrued under the policy belonged to the First State Bank, Dry Ridge, Kentucky, the assignee of the policy and not to Mrs. McCane; and (3) the Company should also have been granted the motion for a peremptory instruction because the evidence did not show that Mrs. McCane was disabled in January, 1932.

Appellant issued a $1,000 policy of life insurance containing double indemnity and disability provisions, including waiver of premiums, to Mrs. McCane in March,

1928. The annual premium of $36.30 included $1 for double indemnity benefits and $3.39 for disability benefits. The policy provided that, in the event Mrs. McCane became totally disabled, she should receive a monthly income payment of $10 for each completed month from the commencement of and during the continuance of her disability. On April 6, 1938, Mrs. McCane assigned her policy, on a form provided by the Insurance Company for such purposes, to the First State Bank, as collateral security upon a loan made to her by the Bank. The Insurance Company consented to the assignment. The assignment covered "all dividend, benefit and advantage to be had or derived therefrom." Mrs. McCane contracted pneumonia during the early part of 1930, and in June of that year she filed a claim with the Insurance Company for disability benefits under her policy, setting out that she was disabled because of heart trouble following the attack of pneumonia. The Company paid her the $10 monthly disability benefits from March 2, 1930, until January 2, 1932.

On January 16, 1932, the Company notified Mrs. McCane by letter that they had given her case "most careful consideration" and found it necessary to advise her that it no longer felt justified in allowing her further benefits, as it did not appear that she was any longer "continuously totally disabled" within the meaning of the disability benefit provision of her policy; and that the premiums thereafter due would become payable in conformity with the terms of the insurance contract. Dr. J. J. Marshall testified that he examined Mrs. McCane on January 8, 1932, for the Company and reported to it that she was not disabled. Mrs. McCane testified that she did not recall that Dr. Marshall examined her at that time, but that he had examined her along in the fall of 1931. Marshall testified that, when he last went to Mrs. McCane's home to examine her, he found her finishing up a washing, and that her hands were wrinkled where she had had them in the water for some little time. He stated that Mrs. McCane told him that she had put out the washing with the help of a little girl who was with her at the time.

Appellee paid no further premiums on her policy after January, 1932, but she testified that she had the First State Bank pay them for her, and it appears from the record that the Bank did pay them in 1932, 1933 and

1934. The February, 1935 premium not having been paid, the Insurance Company notified Mrs. McCane and the special deputy banking commissioner for the First State Bank in June, 1935, that the policy had lapsed because of nonpayment of the premium due, and that the excess of the cash value of the policy over the indebtedness had been used to purchase for Mrs. McCane temporary insurance amounting to $919, which would expire August 24, 1937. In April, 1936, Mrs. McCane notified the Insurance Company, through her counsel, that she believed she was entitled to the $10 monthly benefit payments from January, 1932, because she had been disabled ever since that time. The Insurance Company immediately notified appellee, through her counsel, that the policy had lapsed because of non-payment of the premium due February 20, 1935, and that all rights to disability benefits had terminated.

There is some evidence that Mrs. McCane received medical treatment after January, 1932, and prior to the commencement of this action, but her regular physician did not testify at the trial and his deposition was not taken. One witness testified that he took Mrs. McCane to a doctor during this period and she testified that she had been to a doctor in Covington. Two doctors, who examined her prior to the trial, stated in their depositions that she was suffering from Bright's disease, and from high blood pressure. Dr. C. M. Eckler said that her blood pressure was "slightly elevated," while Dr. R. E. Kinsey said that she had high blood pressure and that he found it to be 185, whereas normal blood pressure for a woman of her age would not be over 140. Dr. Kinsey stated further that Mrs. McCane was "weak, tottery, frail." Dr. Eckler testified that, aside from the history of her case furnished him by Mrs. McCane, it was one of "long duration," and that she was incapacitated to do any work.

Appellee and her son, Louis McCane, testified that she had Bright's disease. While Louis stated that he got the history of his mother's case from her doctor, this evidence was not competent. Neither was Mrs. McCane's statement as to her illness competent evidence, though it is possible that it would have been competent for her to state from the records for what illness she had formerly been compensated, and as to whether or not the symptoms of her ailments had continued to be

the same. Four other lay witnesses testified that they had seen Mrs. McCane on several occasions since 1932, and that she had been poorly a good deal of the time. None of these four witnesses testified that they knew what was wrong with Mrs. McCane. They stated that when they had been around her home someone other than Mrs. McCane was doing most of the work. Some of the witnesses testified that, in their opinion, Mrs. McCane was not able to do her housework. It was error to admit this testimony as to Mrs. McCane's ability to do her work. See cases hereinafter cited. A member of Mrs. McCane's family had lived with her all the time since 1932. The lay witnesses who testified for Mrs. McCane had been around her home from time to time, some of them more frequently than others. They testified from facts within their knowledge that she was poorly and did little work. While there was some evidence that she did a little of her housework from time to time, it is clear from the record that most of it had been done by other persons. It is our view that there was sufficient competent evidence given by the lay witnesses concerning Mrs. McCane's health to warrant submitting the case to the jury. In reaching this conclusion we are not unmindful of the rulings relating to the testimony of lay witnesses in the cases of Jefferson Standard Life Insurance Company v. Pierce, 264 Ky. 698, 95 S. W. (2d) 579, Minnesota Life Insurance Company v. Vire, 264 Ky. 257, 94 S. W. (2d) 667, and Equitable Life Assurance Society v. Fannin, 245 Ky. 474, 53 S. W. (2d) 703; to the effect "that lay witnesses may testify as to the apparent vigor, strength and physical condition of another person, and as to the presence or absence in such person of symptoms indicating forms of disease so common and well understood as to be within the knowledge of a layman."

While we have seen that premiums were paid on the policy for three years after the Company stopped paying disability benefits to Mrs. McCane in January, 1932, and that she did not furnish the Insurance Company with evidence of her disability prior to the time her attorney wrote the company in April, 1936, it must not be overlooked that, following an illness of pneumonia, Mrs. McCane had been paid disability benefits for a period of approximately two years. Furthermore, at the time she was examined by her physicians prior to the trial she had Bright's disease and high blood pressure, and was

in a frail condition. As to what her family physician would have testified we can not speculate; but, in view of the circumstances mentioned, and the testimony of the lay witnesses that Mrs. McCane did very little of her housework and was poorly, we must conclude that there was sufficient evidence to take the case to the jury, and to warrant the jury in finding for Mrs. McCane.

Lastly, we are constrained to conclude that the trial court erred in not making the First State Bank a party to the action. The Insurance Company pleaded the assignment of the policy to the bank by Mrs. McCane on April 6, 1928. The Bank not having been made a party to the action originally, it was the duty of the trial court under section 28 of the Civil Code of Practice to make the Bank a party after the Insurance Company made this plea, or to dismiss the action without prejudice. See Carpenter v. Miles, 17 B. Mon. 598; Puckett et al. v. Jameson, Sheriff, 157 Ky. 172, 162 S. W. 801.

Appellee's contention that the insurance contract is, in fact, two contracts because of the separate premium for disability benefits is not well grounded. Under this argument there would be three contracts, namely, a straight life contract, a double indemnity contract, and a disability contract. In the case of Rhine v. New York Life Insurance Company, 273 N. Y. 1, 6 N. E (2d) 74, 108 A. L. R. 1197, the New York Court of Appeals held that a policy of the kind issued to Mrs. McCane was a single policy contract consisting of promises which for some purposes and in some contingencies are separable. It was pointed out, however, that, while the promises are to some extent separable, they are none the less integral parts of a single policy. But aside from this, the assignment of the policy by Mrs. McCane to the Bank specifically covered all of the possible benefits under it by the use of the words, "all dividend, benefit and advantage to be had or derived therefrom."

In the case of Mercer National Bank v. White's Ex'r, 236 Ky. 128, 32 S. W. (2d) 734, a life insurance policy with sick benefits was assigned to secure a debt of the party on whose life it was issued. In that case we held that [page 736] "the pledge of a life insurance policy to secure a debt puts in lien all interest the pledgor has in the insurance contract," and that the

Company correctly paid the sick benefits accruing under it to the bank to which it had been assigned.

Wherefore, the judgment is reversed and cause remanded for a new trial and proceedings consistent with this opinion.