## Arrowood v. Duff.

June 6, 1941.

Williams & Allen and O. J. Cockrell for appellant.

John E. Campbell, Scott E. Duff and C. E. Duff for appellee.

OPINION OF THE COURT BY JUDGE THOMAS—Affirming.

On March 27, 1914, the Citizens National Life Insurance Company, in consideration of an annual premium of $50.10, issued a policy on the life of William O. Sizemore, who was then a citizen and resident in Perry County. The amount of the policy was $3,000 to be paid to the estate of the insured following his death upon due proof of loss. It contained provisions for an assignment of the policy with the consent of the insurer and insured, which should be in writing and attached to the policy. Likewise it contained the usual provisions that there should be deducted from the proceeds of the policy any indebtedness due the company issuing it. The premiums were paid each year—as hereinafter stated—until the death of the insured, which occurred on October 24, 1938; but some few years prior thereto he removed his residence from Perry County to Breathitt County and was a citizen of the latter county at the time of his death, when appellant, Lewis Arrowood, was appointed and qualified by and before the county court of that county as administrator of his estate.

The Citizens Life Insurance Company which issued the policy wound up its affairs and went out of business,

transferring its obligations and assets to the Intersouthern Life Insurance Company, which latter assumed the obligations of the Sizemore policy. After that assumption the Intersouthern Life Insurance Company became involved and in receivership proceedings the Kentucky Home Mutual Life Insurance Company purchased the assets and assumed its liabilities, including the policy here involved, and all of which occurred before the death of the insured, William O. Sizemore. At the time of the issuance of the policy the insured was indebted to E. C. Duff, Jr.—also a citizen of Perry County—in the sum of $605, and the insured was unable to meet the payments of the annual premiums on the policy. In that situation he assigned the policy to E. C. Duff, Jr., to secure the debt due him from the insured ($605) and all future premiums that Duff might pay to keep the policy alive, which he agreed to do and which promise he performed each year until 1919. For some reason not explained in the record he decided to be released from his obligation to continue the premium payments on the policy; whereupon it was agreed between the insured, E. C. Duff, Jr., and his son, Floyd C. Duff, that the latter might assume his father's place as paymaster of future premiums on the policy and as between them with the approval and consent of the insured the son also agreed to assume and pay to his father the latter's accumulated claim against the insured, Sizemore, to which the insurer consented and another assignment of the policy by E. C. Duff, Jr., and the insured, was made to Floyd C. Duff, the appellee and plaintiff herein.

Plaintiff, after the assignment of the policy to him in conformity with its terms, with the approval of the insurance company, paid some of the annual later accruing premiums, but for some reason, not explained in the record, he did not pay all of them up to the time of the insured's death out of his own means. Instead he borrowed from the Company with the consent of the insured on each annual premium date its amount and which at the time of the insured's death was $344 with interest, making the amount due on the policy at the death of the insured $2,662.48, which was the amount of the policy less the indebtedness with interest due to the Company. After the death of the insured proof was made and furnished to the Company, but both Arrowood as administrator of the estate of the insured, and plaintiff, Floyd C. Duff, asserted claims to the sum due and

they each demanded of the Company payment thereof to him. In the circumstances it declined to pay to either of them, when plaintiff filed this Declaratory Judgment action in the Perry circuit court against the Insurance Company and the administrator of the insured, seeking a declaration of the rights of the parties. The Insurance Company answered and set out the facts we have related and moved that it be permitted to pay the amount due under the policy into court, which was sustained and the payment made, leaving as the only parties contestant over the fund the plaintiff, Floyd C. Duff, and appellant, the administrator of the insured. The latter filed a special demurrer to the petition on the ground that the action had been brought in the wrong venue but the court held otherwise and overruled the special demurrer when the administrator answered, the entire contents of which was a denial of the averments of the petition on the ground of want of information or belief. Proof was taken and the facts as we have related them were undeniably established, the administrator introducing no testimony whatever. In the meantime the court impaneled a jury to pass upon the issues of fact and it returned a verdict in favor of plaintiff, Duff,. whose claim (including that due his father and which he had assumed, as stated), plus interest, amounted·to more than the fund in court; whereupon the court adjudged that plaintiff was entitled to the fund and ordered it paid to him, which was later done by the depository receiving it as ordered by the court, and from that judgment the administrator prosecutes this appeal.

Counsel for appellant in his brief filed in this court argue four grounds for reversal, which are: (1) Error of the court in overruling the special demurrer filed to the proceedings by the administrator; (2) error in overruling the general demurrer filed to the petition; (3) incompetent evidence introduced by plaintiff, and (4) erroneous instructions—each of which will be briefly discussed and disposed of in the order named.

1. Counsel for appellant, Arrowood, seems to be obsessed with the idea that this action is governed by the various sections of the Statutes, and of our Civil Code of Practice, localizing and temporarily deferring actions against personal representatives of estates of deceased persons and fixing the period before which such actions may not be brought. Therefore, many cases—as well as

what counsel conceives to be relevant and pertinent sections of both our Statutes and the Code—are cited and relied on in support of the argument that the Perry circuit court was without jurisdiction to determine the controversy as presented by the pleadings in the cause. It will be observed that the action is not one to settle the estate of the insured, nor did it seek to collect a claim from the estate which was in any wise disputed by the administrator, or if so then one which the testimony clearly showed that the amount claimed was due plaintiff under the two assignments of the policy made and consented to in accordance with its terms, and which assignment contracts were each made and agreed to be performed in Perry county, as was also true of the policy at the time it was issued. The action was to determine who was entitled to its proceeds and the relief sought was confined to the determination of that single issue. If plaintiff under the facts disclosed and undisputed was entitled to the fund involved, then his rights in the premises were superior to any other creditor of the decedent, if any, and such superiority also prevailed over any rights of the estate of the insured.

Section 71 of our Civil Code of Practice—after excepting therefrom certain other actions in other named sections—prescribes that: "an action against an incorporated bank or insurance company may be brought in the county in which its principal office or place of business is situated; or, if it arise out of a transaction with an agent of such corporation, it may be brought in the county in which such transaction took place." However, in the cases of Ocean Accident & Guarantee Corporation v. Milford Bank, 236 Ky. 457, 33 S. W. (2d) 312, and Insurance Company of North America v. Hopper, 253 Ky. 402, 69 S. W. (2d) 728, and others cited in those opinions, we held that Sections 71 and 72 (the latter applying to venue of actions by and against corporations generally) should be read and construed together, and that an action on an insurance policy might be brought in the venue of its performance. It is, therefore, argued in this case that the "performance" of the insurance contract in this case was at the place where the insured lived and resided at the time of his death, and when the insurance claim became payable, which in this case was in Breathitt county. But the cases cited hold that the place of performance does not prevail over the place where an insurance contract was made so as to take

precedence over the place of the making in determining questions of venue. Besides, the contract here relied on by plaintiff, as between him and the administrator, was the one assigning to him the policy with the consent of the insured and the Company, wherein each of them not only entered into the assignment contract with plaintiff in Perry county where he lived and the insured each and all parties thereby agreed to perform that contract with him at that place. We, therefore, conclude that the argument attacking the venue of the action is not sustainable, and the court properly overruled it.

But it is likewise argued that this action is one for settlement of the estate of the insured and under Section 428 of the Civil Code of Practice it may not be brought by any one, except the administrator until six months after he qualifies, and, since this action was brought within that time it is insisted that the special demurrer should have been sustained. Also, it is argued that the action was prematurely brought contrary to the provisions of Section 3847 of Baldwin's 1936 Revision of Carroll's Kentucky Statutes, forbidding maintenance of an action against personal representative of a decedent's estate until the expiration of six months after the latter's qualification; but that section clearly applies to actions asserting a contested liability against the estate and not to an action under our declaratory judgment statute, which was passed long after the enactment of the section relied on, and which has for its chief purpose the obtention of advance adjudications upon questions such as are here involved, and for the determination of which the remedy was enacted.

2. The only argument in support of ground (2) is rested on the undisputed principle that it is against public policy for a stranger to speculate on the life of one in whose continued life he has no insurable interest by becoming a beneficiary under a policy on his life. Therefore, a vast number of cases are cited in brief in support of that proposition which neither we nor opposing counsel, nor any one else disputes; but the same authorities universally declare that the public policy rule referred to will not apply to or forbid the pledging of a life insurance policy to a creditor of the insured as collateral security for his debt, and that although the pledge purports to be an absolute assignment of the policy it will be enforceable by the pledgee or assignee

only to the extent of the debt for which it was pledged. Two comparatively recent cases supporting that exception to the general public policy rule are, Mercer National Bank v. White's Ex'r, 236 Ky. 128, 32 S. W. (2d) 734, and New York Life Insurance Company v. McCane, 276 Ky. 712, 124 S. W. (2d) 1057, 1060. Many others of like tenor are referred to in those opinions. They all hold that such a pledge will be upheld not only to secure the amount of existing indebtedness when made, but also future indebtedness which is agreed to be incurred and which is later done under the agreement. The court, therefore, did not err in overruling the general demurrer to the petition.

3. The only item of alleged incompetent evidence referred to in brief as supporting ground (3) is a letter purporting to have been written by the insured on April 5, 1931, and which was addressed to plaintiff and in which the insured expressed an agreement for plaintiff to assume the position formerly occupied by his father in making future premium payments in order to keep the policy alive. In that letter the facts, as we have hereinbefore recited, are substantially set out, followed by these statements: "I owe this money and will pay it to you instead of to your father. I will also pay to you any and all premiums on this policy which may be necessary to keep the policy in force and paid by you." No legal objection is put forward showing the incompetency of that letter, but on the contrary it appears to be extremely competent on the issues made by the character of answer filed by the administrator. In addition thereto there was no objection to the introduction of that letter that we have been able to find in the record. If, however, there had been the court could scarcely have done anything else but to overrule it. We, therefore, conclude that this ground is also without merit.

4. This ground really need not have been included in our classification of the objections to the judgment, since not a word is found in brief in support of it, and under numerous cases heretofore determined by this court the ground itself is abandoned. But were it otherwise, and the question of the correctness of the instructions was properly before us, we would then not hesitate to approve them, since the court told the jury that "the only question to be determined is the amount, if any, that is due to the plaintiff," and in which the court also

told the jury that plaintiff was not entitled to recover the full amount of the fund involved, unless the debt due him was sufficient to consume it. Pursuant to that instruction the jury found and returned the amount of plaintiff's debt, which, as we have seen, consumed the total amount of the fund after the payment of the indebtedness to the Insurance Company. We not only fail to see any error in that instruction, but on the contrary we can scarcely imagine what other question the court could have submitted, or how it could be done in plainer language.

Wherefore, for the reasons stated, the judgment is affirmed.