**Brownell COMBS, II Administrator C.T.A. of the Estate of Leslie Combs, II, Deceased, Plaintiff,**

v.

**INTERNATIONAL INSURANCE COMPANY, Defendant.**

Civil Action No. 00–217.

United States District Court, E.D. Kentucky.

Sept. 10, 2001.

Laurence J. Zielke, Lawrence L. Pedley, John H. Dwyer, Jr., Pedley, Zielke, Gordinier, Olt & Pence, Louisville, KY, for plaintiff.

David R. Monohan, Woodward, Hobson & Fulton, Louisville, KY, Louis G. Corsi, Landman, Corsi, Ballaine & Ford, P.C., New York City, for defendant.

## OPINION AND ORDER

FORESTER, Chief Judge.

This matter is before the Court pursuant to the Defendant's motion for summary judgment. Having been fully briefed, this matter is ripe for review.

## I. *Factual Background*

Leslie Combs, II ("Mr.Combs") founded Spendthrift Farm in 1937 and by the early 1980's the farm included over 1,800 acres and approximately forty three stallions, including the last two Triple Crown Winners. By 1981, Mr. Combs, Spendthrift's President, was over eighty years old and interested in estate planning to ensure that the farm would continue after his death. Mr. Combs and his son Brownell Combs, II ("Plaintiff" or "B. Combs") developed a plan for private placement of Spendthrift stock through which blocks of stock would be sold to certain sophisticated investors already involved in the thoroughbred industry, thus creating a pool of shareholders from which a board of directors could be elected to lead Spendthrift into the future.

The above private placement plan led to Mr. Combs and others being sued, in their individual capacities and as agents of Spendthrift Farm, Inc. by Fred L. Fredricks. The Fredricks case was consolidated in the Northern District of California with several other cases making substantially similar claims. These cases are collectively referred to as the "California litigation." These complaints asserted a variety of state and federal securities law claims as well as state common law claims against Mr. Combs and others. The claims against Mr. Combs focused primarily on representations made in the private placement memorandum (PPM) regarding the financial condition of the farm and the value of the assets in the farm. The California litigation ultimately resulted in a $2 million court-approved settlement paid by Mr. Combs in 1989.

Mr. Combs was insured by a Director and Officer's liability policy, International Insurance Company ("International") policy number 524–029517–1. The policy provided coverage as follows:

"If during the policy period any claim or claims are made against the insureds (as hereinafter defined) or any of them for a *Wrongful Act* (as hereinafter defined) while acting in their individual or collective capacities as Directors or Officers, the Insurer will pay on behalf of the Insureds or any of them, their Executor, Administrator, Assigns 95% of all losses (as hereinafter defined), which the Insureds or any of them shall become legally obligated to pay...." *See* Complaint, Exhibit A, Policy Part I, Insuring Clause ¶ 1. (emphasis added)

It is undisputed by the parties that the events giving rise to the California litigation occurred during a period of coverage under the policy. As required by the terms of the policy, Mr. Combs tendered all of the complaints to International, via a November 14, 1986, letter. International denied coverage by a December 19, 1986, letter mailed from its authorized New York representative, on the grounds that the actions of Mr. Combs precipitating the California litigation did not fall within the policy definition of a "wrongful act." The policy defined "wrongful act" as an act or omission claimed against an insured "*solely* by reason of their being directors or officers of the company." *See* Complaint, Exhibit A, Policy Definitions 4(b) (emphasis added). International justified the denial of coverage by asserting that the wrongful conduct alleged against Mr. Combs in the California litigation did not involve acts solely in his capacity as a director or officer of Spendthrift, but rather as an individual who was selling his shares in Spendthrift for his own personal gain.

The present lawsuit was commenced in June, 2000 by the Plaintiff Brownell

Combs on behalf of his late father Mr. Combs' estate. The Plaintiff asserts that International, by the December 19, 1986, letter, wrongfully denied Mr. Combs insurance coverage under the Directors and Officer's liability policy. The Plaintiff asserts claims for breach of contract, breach of good faith and fair dealing, and for bad faith. The suit seeks $2.77 million in compensatory damages, consisting of the $2,000,000 Mr. Combs paid in the 1989 court approved settlement and more than $770,000 in defense fees incurred from 1986 through approximately 1992, as well as an unspecified amount of punitive damages. International defends by again arguing that the alleged wrongful conduct of Mr. Combs resulting in his settlement of the California litigation did not involve acts solely in his capacity as a director or officer of Spendthrift.[1]

## II. DISCUSSION

Defendant International moves for summary judgment on the following grounds: that there is no genuine issue of material fact for trial; it is entitled to judgment as a matter of law; for an award of its costs in bringing this summary judgment motion; and for such other relief as the Court deems just and proper. The Defendant presents three separate arguments for summary judgment: (1) that Plaintiff's claims are barred by the statute of limitations; (2) that Plaintiff's complaint is barred by the doctrine of judicial estoppel; and (3) that International properly denied coverage based on the language of the policy. For the following reasons, this Court grants Defendant's motion for summary judgment, finding that the Plaintiff's claims are barred by the applicable statute

---

1. International also denied coverage on the grounds that the stock was not registered pursuant to SEC requirements, as required by an exclusion of coverage in the policy. International does not seek summary judgment based on this exclusion.

of limitations, and the parties will bear their respective costs.

## A. Summary Judgment Standard

Summary judgment is appropriate if the moving party establishes that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c); *see Celotex Corp. v. Catrett,* 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). In reviewing a motion for summary judgment, "this Court must determine whether 'the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'" *Patton v. Bearden,* 8 F.3d 343, 346 (6th Cir.1993) (quoting *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 251–52, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)). The evidence, all facts, and any inferences that may permissibly be drawn from the facts must be viewed in the light most favorable to the nonmoving party. *See Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986).

Once the moving party shows that there is an absence of evidence to support the nonmoving party's case, the nonmoving party must present "significant probative evidence" to demonstrate that "there is [more than] some metaphysical doubt as to the material facts." *Moore v. Philip Morris Companies, Inc.,* 8 F.3d 335, 340 (6th Cir.1993). Conclusory allegations are not enough to allow a nonmoving party to withstand a motion for summary judgment. *Id.* at 343. "The mere existence of a scintilla of evidence in support of the [nonmoving party's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [nonmoving party]." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. at 252, 106 S.Ct. 2505. "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Id.* at 249–50, 106 S.Ct. 2505 (citations omitted). Particularly critical for purposes of this summary judgment motion, a factual dispute is material only if it might affect the outcome of the suit under the governing law. *Id.* at 248, 106 S.Ct. 2505.

## B. Plaintiff's Breach of Contract Claim

The Defendant bases its summary judgment motion on the assertion that, pursuant to Kentucky's borrowing statute, the cause of action accrued in either New York or Illinois, in which case the suit would be barred by either a six or ten year statute of limitations. The Plaintiff argues that the cause of action accrued in Kentucky and that Kentucky's fifteen year statute of limitations applies. Plaintiff does not dispute that if the cause of action accrued in New York or Illinois that the breach of contract claim is barred. Likewise, Defendant does not dispute that if the cause of action accrued in Kentucky, the breach of contract claim is timely. Thus, the question of law of where the cause of action accrued determines the applicable statute of limitations period, and ultimately resolves the summary judgment motion.

 Federal courts sitting in diversity must apply the procedural law of the forum, here Kentucky, including its statutes of limitations. *See Electric Power Bd. of Chattanooga v. Monsanto Co.,* 879 F.2d 1368, 1375 (6th Cir.1989). Kentucky has a fifteen year statute of limitations for breach of written contract causes of action. KY.REV.STAT.ANN. ("K.R.S.") § 413.090(2) (Banks–Baldwin 2000). However, in deciding what law applies to a particular case, one must first look to the forum state's choice of law statute. *See Electric Power* at 1375 (*citing Erie R. Co. v. Tompkins,* 304 U.S. 64, 58 S.Ct. 817, 82

L.Ed. 1188 (1938)); *Day & Zimmermann, Inc. v. Challoner,* 423 U.S. 3, 96 S.Ct. 167, 46 L.Ed.2d 3 (1975). Kentucky has a "borrowing statute" that, when applicable, "borrows" the limitations period of another state where a cause of action accrues, when that period is shorter than Kentucky's limitations period. *See* K.R.S. § 413.320. The borrowing statute is triggered only when the cause of action *accrued* in another jurisdiction. The borrowing statute provides:

> When a cause of action has arisen in another state or country, and by the laws of this state or country where the cause of action accrued the time for the commencement of an action thereon is limited to a shorter period of time than the period of limitation prescribed by the laws of this state for a like cause of action, then said action shall be barred in this state at the expiration of said shorter period. K.R.S. § 413.320.

■ Both parties concede that Kentucky substantive law governs this case. This Court applies the law of the state of the borrowing statute to determine where a cause of action for breach of contract accrued. *See Cope v. Anderson,* 331 U.S. 461, 466, 67 S.Ct. 1340, 91 L.Ed. 1602 (1947). In dispute is *where* a cause of action for an alleged breach of contract, specifically an insurance contract, accrues under Kentucky law. The Kentucky Supreme Court's last statement on choice-of-law governing contracts was in *Breeding v. Massachusetts Indem. & Life Ins. Co.,* 633 S.W.2d 717, 719 (Ky.1982), in which the court adopted a "most significant contacts" test. *See Security Ins. Co. of Hartford v. Kevin Tucker & Associates, Inc.,* 64 F.3d 1001, 1005–06 (6th Cir.1995). However, as explained by the Sixth Circuit, the Kentucky borrowing statute, when applicable, removes the often difficult choice-of-law question from the courts and substitutes the question of interpreting the meaning and application of the borrowing statute. *See Willits v. Peabody Coal Co.,* 188 F.3d 510, 1999 WL 701916, *12 (6th Cir.1999) (unpublished opinion). In this case, both parties agree that Kentucky law applies; thus, the choice of law question is removed and only the separate question of interpreting Kentucky's borrowing statute remains.

■ This Court is bound by the Sixth Circuit's interpretation of the Kentucky borrowing statute. *See Atkins v. Schmutz Mfg. Co.,* 372 F.2d 762 (6th Cir.1967), *cert. denied,* 389 U.S. 829, 88 S.Ct. 92, 19 L.Ed.2d 86 (1967). *Willits* sets forth a three-part analysis for determining the applicability of the Kentucky borrowing statute:

> (1) Whether the cause of action accrued in another state;
>
> (2) If the cause of action did accrue in another state, whether that state's statute of limitations for the particular cause of action is shorter than the corresponding Kentucky statute of limitations; and
>
> (3) If the accrual state's statute of limitations is shorter than Kentucky's, then the statute of limitation of the accrual state is applied; but if the statute of limitations for the cause of action in the accrual state is longer than Kentucky's, then apply Kentucky's statute of limitations.

*See Willits* at *12.

■ Thus, the key factor in the analysis of the borrowing statute is where the cause of action accrued, and this accrual trigger is explained in *Willits.* In *Willits,* the plaintiff sued, *inter alia,* for the defendant Peabody Coal Company's alleged improper calculation of royalties owed the Plaintiff under coal-mining royalty agreements. *Willits* at *1–2. Peabody's obligation was to calculate the royalties and

pay them to the Plaintiffs. *Id.* Kentucky law holds that the cause of action accrues where the breach of contract occurs. *See Willits* at *12 (citing *Hoskins' Adm'r v. Ky. Ridge Coal Co.*, 305 S.W.2d 308, 311 (Ky.1957)). *Willits* held that the breach of contract occurred at the Defendant's Missouri office where the alleged improper calculation of royalties occurred and from where the payment checks were mailed. *Willits* at *14.

Plaintiff B. Combs argues that *Willits* holds that "the breach occurs at the place of performance or 'the time and place where that is not done which ought to be done.'" Plaintiff insists that the place of performance determines where the breach of contract accrues under Kentucky law, and that the place of performance was Spendthrift Farm in Kentucky where Mr. Combs was supposed to receive the check. According to the Plaintiff, the failure of Spendthrift and Mr. Combs to receive the check in Kentucky was the breach; thus, the cause of action accrued in Kentucky and the Kentucky borrowing statute is not triggered.

B. Combs's argument is premised on a misreading of *Willit's* holding. Contrary to the Plaintiff's contention, *Willits* specifically rejected the line of cases, cited by the *Willits'* Plaintiff and again by B. Combs, standing for the proposition that a breach of contract cause of action accrued at "the time and place where that is not done which ought to be done." *Willits* at *13. *Willits* was clear: "none of these cases applies Kentucky law, which governs the question of where the cause of action accrued in this case." *Id.* B. Combs has not cited a single Kentucky authority for the proposition that a breach of contract action accrues under the borrowing statute where the obligation is not paid.

In contrast to the place of accrual of Combs's breach of insurance contract cause of action, *Willits* provides an example of a breach of contract action that does accrue in Kentucky, namely, the breach of contract for the expeditious delivery of information to a specific address. *See id.* at n. 8 (citing *Western Union Telegraph Co. v. Lacer*, 122 Ky. 839, 93 S.W. 34 (1906)). In *Western Union*, the court found that the breach *and accrual* of the cause of action occurred in Kentucky, the place where Western Union failed to timely deliver to the brother of a dying man a telegram incorrectly addressed in Indiana. *Western Union*, 93 S.W. *at* 34–35. Clearly, the place of delivery and time of delivery were the essential objects of the service contract in *Western Union*. However, the payment of royalties in *Willitts*, and the payment of the insurance claim to Mr. Combs were the essence of the contracts in these cases, not the place or even time of payment.

Unlike in *Western Union*, in both *Willits* and in the Combs's fact pattern, the contract was for payment of money allegedly due; and in these cases, the cause of action accrues where the decision to deny payment was made. As noted in *Willits*, "[the Defendant] was required to pay the Plaintiffs whether the Plaintiffs showed up at [Defendant's] Missouri office, or were living in Kansas, or had just moved to China." *Willits* at *13. Likewise, International was required to reimburse Spendthrift Farm corporation and its officers and directors, regardless of location. The mere fact that Kentucky was the location of Spendthrift Farm and the obvious place of payment under the insurance contract does not mean that the cause of action accrued in Kentucky.[2]

---

**2.** The Plaintiff, in an attempt to show that his cause of action accrued in Kentucky, cites a series of cases interpreting Kentucky's venue statute. *See, e.g., T.C. Young Const. Co. v.*

■ While acknowledging that "there is little or no law in Kentucky concerning *where* a breach of contract action accrues," *Willits* analogized to Kentucky statutes determining *when* a breach of contract has accrued. As noted by the Sixth Circuit:

> The time when a cause of action arises and the place where it arises are necessarily connected, since the same act is the critical event in each instance. *The final act which transforms the liability into a cause of action necessarily has both aspects of time and place. It occurs at a certain time and in a certain geographical spot.*
>
> *Willits* at *12 (emphasis added) (citing *Helmers v. Anderson,* 156 F.2d 47, 51 (6th Cir.1946) *aff'd sub nom Cope v. Anderson,* 331 U.S. 461, 67 S.Ct. 1340, 91 L.Ed. 1602 (1947)).

The "final act" language cited by the Sixth Circuit above is critical in that it is indicative of how the Kentucky borrowing statute, contrary to B. Combs's contention, is not interpreted pursuant to modern conflict of law approaches, such as the "center of gravity" approach to the concept of accrual. Instead, accrual is interpreted along the lines of the traditional Restatement One "vested rights" theory. As scholars have noted, "the concept of accrual is similar to the idea of vesting, which

was the primary basis of the traditional vested rights approach to choice of law." *See* Ibrahim J. Wani, *Borrowing Statutes, Statutes of Limitations And Modern Choice of Law,* 57 UMKC L.Rev.. 681, 690 (1989) (citing J. Story, Commentaries on the Conflict of Laws, § 18 (2nd ed. 1841)). Legal rights and obligations, according to this theory "vest at the happening of the last event creating a cause of action." *Id.* While the vested rights theory and the concept of accrual have been criticized as largely illusory and undefinable,[3] B. Combs has presented no Kentucky authority rejecting this traditional interpretation of accrual. In fact, the Kentucky Borrowing Statute was last amended in 1942, at a time when Kentucky still followed the vested rights approach to choice of law. K.R.S. 413.320. Moreover, this Court is obviously restricted from construing the Kentucky borrowing statute in a manner inconsistent with the Sixth Circuit's interpretation in *Willits. See Atkins v. Schmutz Mfg. Co.,* 372 F.2d 762 (6th Cir.1967), *cert. denied,* 389 U.S. 829, 88 S.Ct. 92, 19 L.Ed.2d 86 (1967).

This Court finds that the alleged breach of the Combs's insurance policy occurred when International, by its duly authorized New York representative, made the decision to deny insurance coverage and

---

*Hartford Accident & Indem. Co.,* 441 S.W.2d 781 (Ky.1969); *Prudential Ins. Co. of America v. Terry,* 265 Ky. 91, 95 S.W.2d 1109, 1110 (1936); *Insurance Co. of North America v. Hopper,* 253 Ky. 402, 69 S.W.2d 728 (1934); *Torrent Lodge v. National Surety Co.,* 231 Ky. 302, 21 S.W.2d 439 (1929). These cases merely address the procedural question of venue for the suit, not the substantive question of what law applies to the suit, and certainly not the question of interpreting where a cause of action accrues for purposes of the borrowing statute. Again, to the extent these cases stand for the proposition that breach of a contract occurs in the place of performance, this is non-responsive to the question of where a cause of action accrues

under the borrowing statute. For example, in *T.C. Young,* the court is able to draw a parallel between the "center of gravity" choice of law approach and the issues presented in that case, because there was no legislative choice of law implicated, i.e., the borrowing statute was not implicated because there were no conflicting statute of limitations periods. *See T.C. Young* at 783.

**3.** For example, commentators have argued, "[T]here is no consensus on the meaning of accrual and in reality the concept may be undefinable." Wani, *Borrowing Statutes* at 690.

mailed a letter to that effect to Spendthrift Farms and Mr. Combs. This denial by International in New York transformed the contractual liability into a cause of action for Mr. Combs. All of the alleged wrongful conduct by International involved in the decision to deny coverage to Mr. Combs was made in New York. New York is where Mr. Combs's counsel sent the original notice of the California litigation. The alleged wrongful interpretation of coverage by International of coverage under the insurance policy occurred in New York, the place of accrual, just as the alleged wrongful calculations of the royalty payments in *Willits* occurred in the state of accrual.

To the extent that *Willits* is not exhaustive on the application of the Kentucky borrowing statute for the accrual of a cause of action for breach of an insurance contract, this Court predicts that the Kentucky Supreme Court would find persuasive the reasoning of Wisconsin state and federal courts when presented with the same issue. Wisconsin has a borrowing statute similar to the Kentucky statute. *See* WIS.STAT. § 893.07(1) (2000) Wisconsin's "Foreign cause of action" terminology is equivalent in operation to Kentucky's "when a cause of action has arisen in another state or country" terminology. The Wisconsin Supreme Court has held that a contract cause of action is "foreign" when "the final significant event giving rise to a suable claim occurs outside the state of Wisconsin." *Abraham v. General Casualty Co.*, 217 Wis.2d 294, 576 N.W.2d 46, 53–54 (1998). This event "arises where as well as when the final significant event that is essential to a suable claim occurs." *Id.* 576 N.W.2d at 53 (citing *Mack Trucks Inc. v. Bendix–Westinghouse Automotive Air Brake Co.*, 372 F.2d 18 (3d Cir.1966)).

Wisconsin courts further defined the "final significant event" giving rise to a sua-

ble contract claim in *Ristow v. Threadneedle Ins. Co., Ltd.*, 220 Wis.2d 644, 583 N.W.2d 452 (1998). *Threadneedle* involved a Wisconsin resident who sued a South Carolina insurer because he never received a settlement check. *Id.* 583 N.W.2d at 453. The court found that the cause of action accrued in South Carolina where the final significant event giving rise to the claim occurred, namely the defendant's failure to issue the check from its South Carolina office. *Id.* at 455. *Threadneedle* specifically rejected the Plaintiff's argument that the final significant event was the nonreceipt of the settlement check in Wisconsin. *Id.* Thus, the cause of action was found to be "foreign" and the borrowing statute applicable. *Id.* In addition, Wisconsin federal courts have found in the breach of indemnification contract context that the "final significant event giving rise to the cause of action" occurred when "defendants rejected plaintiffs' demands for indemnification." *Terranova v. Terranova*, 883 F.Supp. 1273, 1280–81 (W.D.Wis. 1995). This Court predicts that the Kentucky Supreme Court, if presented with the issue, would find pursuant to the above analysis that B. Combs's cause of action accrued in New York, where International rejected the demands for payment, for purposes of the Kentucky borrowing statute.

■■■■■ Pursuant to the three-step borrowing statute analysis, since B. Combs's cause of action accrued in New York, the second and third steps must be considered. *See Willits* at *12. New York's statute of limitations for breach of a written contract is six years. *N.Y.Civ.Prac.Law & Rules* § 213. Kentucky has a fifteen-year statute of limitations period for breach of a written contract. *See* K.R.S. 413.090(2). Kentucky applies the shorter statute of limitations period, in this case New York's six-year period. *See Ellis v. Anderson*,

901 S.W.2d 46, 47 (Ky.Ct.App.1995) (quoting *Seat v. Eastern Greyhound Lines, Inc.*, 389 S.W.2d 908 (Ky.1965)). Kentucky also borrows the law of the state where the cause of action accrued for purposes of interpreting the borrowed statute of limitation. *See Stanley v. Bird*, 85 F.Supp. 358, 360 (W.D.Ky.1949). The New York six-year statute of limitations for breach of an insurance contract starts to run when the contract is breached. *Niagara Frontier Trans. Auth v. Encon Underwriting Agency, Inc.*, 185 A.D.2d 642, 586 N.Y.S.2d 53 (1992) (citing *Medical Facilities v. Pryke*, 62 N.Y.2d 716, 717, 476 N.Y.S.2d 532, 465 N.E.2d 39 (1984)); *Mary Imogene Bassett Hosp. v. Hospital Plan*, 89 A.D.2d 240, 245, 455 N.Y.S.2d 416 (1982). A breach occurs when the insurer denies liability under the contract. *Continental Casualty Co. v. Stronghold Ins. Co. Ltd.*, 866 F.Supp. 143, 145 (S.D.N.Y.1994). Pursuant to the borrowed New York statute of limitations, the breach occurred December 19, 1986, when International's authorized representative, through a letter from its New York counsel, denied Mr. Combs's claim for insurance coverage. B. Combs initiated the present cause of action on June 6, 2000, well beyond the applicable six-year New York statute of limitations period. Thus, pursuant to Kentucky's borrowing statute, B. Combs's contract claim is barred under Kentucky law.

### C. Plaintiff's Breach of Good Faith and Fair Dealing Claim

B. Combs asserts a claim for breach of the covenant of good faith and fair dealing, purportedly pursuant to *Ranier v. Mt. Sterling Nat'l Bank*, 812 S.W.2d 154, 156 (Ky.1991) ("in every contract, there is an implied covenant of good faith and fair dealing"). Again, it is not in dispute that Kentucky law governs this claim. B. Combs's expert states that this claim is asserted under K.R.S. 304.12–230,

Kentucky's Unfair Claims Settlement Practices Act ("UCSPA"). It is clear that claims for wrongful denial of coverage under an insurance policy fall under the UCSPA. *See Sculimbrene v. Paul Revere Ins. Co.*, 925 F.Supp. 505 (E.D.Ky.1996). The claim is barred under the UCSPA by a five-year statute of limitations. *See* K.R.S. 413.120(2). Of course, it is not necessary to resolve the question of where B. Combs's cause of action accrued for *this claim* because the claim is barred under Kentucky's five year statute of limitations, without regard to application of the borrowing statute. *See Seat v. Eastern Greyhound Lines, Inc.*, 389 S.W.2d 908, 909 (Ky.1965). ("The effect of the [borrowing] statute is that the foreign statute of limitations shall prevail only when the time provided thereby is shorter than the period provided by the Kentucky statute of limitations.").

In an attempt to avoid the UCSPA's five-year limitations period, B. Combs argues, despite his expert's admission to the contrary, that he intentionally did not bring a claim under the UCSPA. However, even according to Plaintiff's strained construction of his breach of good faith and fair dealing claim, he acknowledges that the cause of action is a claim for breach of a contractual term and is thus treated the same as a claim for breach under K.R.S. 413.090 (providing fifteen-year period of limitations for breach of a written contract). Kentucky also borrows the law of the state where the cause of action accrued for purposes of interpreting the borrowed statute of limitations. *See Stanley v. Bird*, 85 F.Supp. 358, 360 (W.D.Ky.1949). Thus, under Plaintiff's strained attempt to avoid the UCSPA's five-year limitations period, his breach of good faith and fair dealing claim would be barred due to the operation of Kentucky's borrowing statute, since the cause of ac-

tion for breach of contract accrued in New York pursuant to the analysis for Combs's breach of express contract cause of action. New York's period of limitations for breach of an express term, six years, governs and the claim would be barred.[4]

 Aside from the statute of limitations bar to Plaintiff's breach of good faith and fair dealing claim, this claim must fail as a matter of law because Plaintiff has not identified a single fact in the record to support the claim. The Defendant specifically argued in support of summary judgment that there were no facts to support such a claim of breach of good faith and fair dealing, and Plaintiff does not identify any contrary facts in his response. The "implied covenant" in every contract imposes a duty to act in a "bona fide" manner, defined by Kentucky law as being "[i]n or with good faith, honesty, openly and sincerely; without deceit or fraud.... Truly; actually; without simulation or pretense. Innocently; in the attitude of trust and confidence; without notice of fraud, etc. Real, actual, genuine, and not feigned." *Pearman v. West Point Nat'l Bank,* 887 S.W.2d 366, 368 n. 3 (Ky. App.1994) (citations omitted); *Forsythe v. BancBoston Mort. Corp.,* 135 F.3d 1069 (6th Cir.1997). The Plaintiff's allegations of breach amount to "misreadings of International's policy" by the International attorney who made the decision to deny coverage under the policy. Construed in the most favorable light and accepted as true for purposes of summary judgment, these allegations merely establish violation of a coverage provision under an insurance contract. Plaintiff does not allege any "dishonesty" "deceit" or "fraud" or

"seiz[ure] of an advantageous business opportunity" as described in *Pearman.* In fact, as acknowledged by Plaintiff, the Defendant in this case is relying on the same grounds for denial of coverage as originally relied upon in 1986.

### D. Plaintiff's Bad Faith Claim

 Plaintiff concedes, as he must, that a claim for bad faith is a tort. Plaintiff's tort claims are barred by a five-year statute of limitations. *See K.R.S.* 413.120(7); *Curry v. Fireman's Fund Ins. Co.,* 784 S.W.2d 176 (Ky.1989). The borrowing statute is not relevant to this analysis because the parties concede that Kentucky's five-year statute of limitations would bar the claim and "[t]he effect of the [borrowing] statute is that the foreign statute of limitations shall prevail only when the time provided thereby is shorter than the period provided by the Kentucky statute of limitations." *Seat v. Eastern Greyhound Lines, Inc.,* 389 S.W.2d 908, 909 (Ky.1965). Thus, Plaintiff's bad faith claim is barred by Kentucky's five-year statute of limitations for tort claims since the claim accrued in 1986 and was not brought until 2000.

 Aside from the statute of limitations bar, Plaintiff's bad faith claim fails separately as a matter of law. Under Kentucky law, bad faith in the insurance context "requires something more than mere negligence. The term itself implies some intentional wrongful conduct.... Mere errors in judgment should not be sufficient to establish bad faith." *Big Yank Corp. v. Liberty Mutual Fire Ins. Co.,* 125 F.3d 308 (1997) (citing *Blue Cross & Blue Shield of Ky., Inc. v. Whitaker,* 687

---

4. To the extent that Plaintiff's claim for breach of good faith and fair dealing is construed as a tort claim, it is subject to Kentucky's five-year statute of limitations period and is thus barred because, pursuant to the above analysis, the claim accrued in 1986 but was not brought until 2000. *See K.R.S.* 413.120(7); *Curry v. Fireman's Fund Ins. Co.,* 784 S.W.2d 176 (Ky.1989).

S.W.2d 557, 559 (Ky.Ct.App.1985)). The Plaintiff's allegations of "misreadings" by the Defendant do not rise beyond mere negligence.

### E. Defendant's Alternative Grounds for Summary Judgment

The finding that Plaintiff's claims are all time-barred renders the Defendant's arguments for judicial estoppel and proper denial of coverage under the policy moot.

## III. CONCLUSION

For the foregoing reasons, the Court, being otherwise fully and sufficiently advised, **HEREBY ORDERS** that:

(1) Plaintiff's motion for oral argument is DENIED;

(2) Defendant's motion for summary judgment [DE # 26] is GRANTED;

(3) Defendant's motion for costs is DENIED;

(4) The pretrial conference and jury trial scheduled in this case are SET ASIDE.

(5) Judgment in favor of the Defendant on all claims will be entered contemporaneously herewith.

### SUMMARY JUDGMENT

In accordance with the opinion and order entered contemporaneously with this summary judgment, the Court HEREBY ORDERS AND ADJUDGES that:

(1) Plaintiff's motion for oral argument is DENIED;

(2) summary judgment is entered in favor of Defendant on Plaintiff's breach of contract claim and such claim is DISMISSED WITH PREJUDICE;

(3) summary judgment is entered in favor of Defendant on Plaintiff's breach of good faith and fair dealing claim and such claim is DISMISSED WITH PREJUDICE;

(4) summary judgment is entered in favor of Defendant on Plaintiff's bad faith claim and such claim is DISMISSED WITH PREJUDICE;

(5) this judgment is final and appealable and no just cause for delay exists; and

(6) this matter is STRICKEN from the active docket.